STATE v. THOMAS B. WALKER and Others.[1]

May 24, 1901.

Nos. 12,589—(17).

**Laws 1897, c. 99—Constitution.**

So much of Laws 1897, c. 99, as excepts the counties thereby organized from the operation of the general laws of the state relating to taxation by counties, and substitutes therefor limitations as to taxation which are applicable to such counties only, is special legislation, and

[1] Reported in 86 N. W. 104.

therefore obnoxious to the provisions of section 33, article 4, of the state constitution.

Proceeding in the district court for Beltrami county for collection of delinquent taxes upon real estate for 1898. The defendants, Thomas B. Walker and three others, separately answered, raising the same issues. The actions were tried together before McClenahan, J., who made findings of fact, and as conclusions of law found that the provisions of Laws 1897, c. 99, restricting and limiting the taxing power of Beltrami county, were constitutional and valid and that the taxes levied by the county in 1898 in excess of such limitations were invalid and not enforceable against the lands of defendants. On application of plaintiff the court certified to the supreme court for its determination the points stated in the opinion. Remanded, with instructions.

*W. F. Street,* for appellant.

*Wilson & Van Derlip,* for defendants.

COLLINS, J.

In proceedings to enforce payment of taxes in Beltrami county for the year 1898, there have been certified up two questions for the determination of this court. These questions are: (1) Is the limitation upon the levying and collection of taxes in Beltrami county contained in Laws 1897, c. 99, constitutional and valid? (2) If the limitation be valid, what is the effect upon the taxes of 1898 extended, respectively, against defendants' property proceeded against in these actions? Our answer to the first disposes of the case.

One feature of the chapter in question was before us in Spencer v. Griffith, 74 Minn. 55, 76 N. W. 1018, in which we held the act constitutional in so far as it provided for the appointment by the governor of officers who should hold office for four years; that is, for about two years after the ensuing election, at which county officers were ordinarily and usually to be elected by the people. This decision was put upon the ground that there might be some substantial reason, which the legislature, in its discretion, deemed sufficient, for the distinction which was made as to the counties referred to in the act and about to be organized. As a matter of

fact, there were but two counties organized at the time of this enactment, and to which it applied; one being Beltrami, the other Cass. The particular objection made to this act is that it is a local and special law regulating the affairs of these counties, and prescribing the powers and duties of their taxing officers, because it limits the total taxes to be levied in each for any one year for the period of ten years to the sum of $12,000, for all purposes whatsoever, with the exceptions specially provided for in the section. If it is in fact a special or local act, it comes within the constitutional prohibition found in section 33, article 4.

We have repeatedly had this particular provision of the constitution under consideration, and the rules by which each case is to be determined have been laid down in as many as twenty cases, commencing with Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, and ending with Murray v. Board of Co. Commrs., 81 Minn. 359, 361, 84 N. W. 104. A clear and definite statement thereof is as follows: "Legislation limited in its relation to particular subdivisions of the state, to be valid, must rest on some characteristic or peculiarity plainly distinguishing the places included from those excluded." This rule, enlarged upon, is well formulated in respondents' brief, thus:

"The rule has been definitely settled, for this state at least, that a law will only be declared void on this ground when it makes arbitrary and unnatural distinction between the objects to which it is intended to apply and others of the same kind in substantially the same situation; but if the classification be one already existing, or founded on legitimate differences in situation, population, or recognized or inherent conditions, the legislation will be valid as to those objects within its purview."

So the question is, was there at the time of the enactment of Laws 1897, c. 99, such a difference in the situation or circumstances or inherent conditions of the counties then organized as to suggest the propriety of different legislation with respect to them from that which had been or would be applied to previously organized counties? The reason for the distinction made in the Spencer case, and on which the decision was based, seems to have been that, because unorganized counties are sparsely settled or

populated, it will take some time to organize county governments and to get them in fair working order. For this reason that part of the act which provided, in effect, that at the coming election no county commissioners should be elected to supersede the governor's appointees, was held valid. This distinction may have been well founded, and the reason given therefor sound, when applied to county commissioners, and wholly without merit when considering the subject of taxation. It might be a proper and legitimate exercise of the legislative power to provide for the continuance of the board of county commissioners in office until the county machinery was well in motion, and yet unjustifiable to specially legislate so as to restrict and cripple its power of taxation. In one case it may be urged that the given reason is apparent and convincing, because it is highly probable that positive benefit to the new county will be the result, while, as to the other, no one could urge that placing a limit on the amount to be raised by taxation would always prove beneficial, or be anything but an injury at times. It certainly would be injurious if the needs of the county required the collection of a greater sum of money than that allowed.

We have general laws limiting the amount of taxes the counties of the state may annually levy, but the legislature had no more right to except the counties of Beltrami and Cass, upon their organization, from the operation of the general laws of the state relating to taxation by counties, and place them in a class by themselves, in this respect, than it would have to so except an already organized county of the state. This it might do and could only do in case such county differentiated from all others by some characteristic or peculiarity sufficient to bring it within the rules as to special legislation. And the legislature might have refused to organize the counties in question, but the mere fact that, although established, they are unorganized, but are about to be organized, affords no reason why, when they cease to be unorganized and are transferred to the class of organized counties, they shall be excepted from the general laws governing other counties, and be subject to a special code for the government of their affairs on the subject of taxation.

The validity of the special provisions in question must be determined without reference to the fact that these counties were unorganized prior to the passage of the statute organizing them. The only real difference between the counties actually organized by the act and the counties in the state already organized was that the latter were in possession of all the powers pertaining to such organizations, while the former were not equipped with county machinery. All of these counties, organized and unorganized, had been established; that is, their boundaries had been fixed and they had been named. A large number had been vested with authority to manage and regulate their own affairs without restriction. Two had not been so authorized, and these were singled out as incapable of fully exercising that authority. Such discrimination cannot be justified on the ground of population; for, when organized, Beltrami county contained more people than many of the counties previously organized had when given full power over their own affairs. When the state census was taken, in 1895, two years prior to the passage of the law in question, this county had a population of one thousand three hundred sixty-four. Out of the eighty-four counties in this state organized prior to 1897, thirty-nine were actually organized with less population than that of Beltrami county in 1895; and, with a single exception, all were set in motion without any limitation or restriction whatsoever upon the powers of the people therein residing. Going into the matter of population a little further, we find that by the census of 1900 the population of Beltrami county had increased most remarkably—from one thousand three hundred sixty-four to eleven thousand thirty—in five years. Assuming that the rate of increase was the same each year—as we have a right to do—between the taking of the census of 1895 and the passage of the act in 1897, we find that the county actually contained a population of more than five thousand five hundred when organized. This indicates very clearly that, in so far as any distinction was attempted or could have been predicated upon actual population, it was wholly unwarranted by the facts. Cass, the other county covered by the law in question, is not, in point of population, so noticeable as Beltrami; but the facts as to each are sufficient to

show that the number of inhabitants therein was not considered.

Nor could this distinction have been properly based upon the ground of need or necessity, for the needs and necessities of the people in unorganized counties are just as great and imperative as are the needs of the residents of other counties already in possession of local self-government. New counties, as well as old, are by law compelled to compensate their officers, to pay the state its revenue tax, its university tax, its loans interest tax, a school tax, and other taxes. A new county must lay out and improve its highways, provide county buildings, maintain peace and order, and provide courts for the administration of justice; and there are many other local wants which might be enumerated,—especially district schools, which are much needed upon the frontier. No one can suggest a single reason why the financial needs and necessities in 1897 of the counties about to be organized were not as great as they were in the other counties. They were probably greater, and yet this law contained a provision which necessarily crippled local government almost to the point of extinction. We are of the opinion that the legislation on this subject did not rest, nor was it based, upon any characteristic or peculiarity of circumstances which plainly distinguished the counties included from those excluded. The court below seems to have been of this same opinion, and to have sustained the law upon this point with great reluctance.

We answer the first question as follows: That the limitation upon the levying and collection of taxes of Beltrami county contained in Laws 1897, c. 99, was and is unconstitutional and invalid.

The case is remanded to the lower court, with instructions to proceed in accordance with these views.