Philadelphia to use v. Gowen, Appellant.

202      453
d 24 SC ¹141
202      453
  32 SC  644

202      453
388C ₂389

*Road law — Municipal lien—Paving—Foot front rule—Evidence—Tax books.*

On a scire facias sur municipal lien for paving, where the defense is that the property was rural, and not assessable for municipal improvements by the foot front rule, the record books of the board of revision of taxes are not admissible in evidence on behalf of the city to show that in the year

in which the work was done the property was assessed for taxation as urban at the full city rate. Such books are mere ex parte entries or declarations in the city's own favor.

*Road law—Taking turnpike road—Original paving—Act of June 2, 1887, P. L.* 306.

There is nothing in the Act of June 2, 1887, P. L. 306, which imposes on a city when it takes possession of a turnpike road, a statutory recognition of the existing pavement, no matter of what composed, as a first pavement which prevents an assessment on adjoining property for any further cost of repaving as well as of repairs.

If, however, the city recognizes or adopts such a road as a street sufficiently well paved for all the requirements of the present or near future, then it becomes a street as a result of such action, and the future growth of the city and necessity of a different pavement will not change its character or subject the abutting owners to charge for new paving.

Argued Jan. 8, 1902. Appeals, Nos. 182 and 183, Jan. T., 1901, by defendants, from order of C. P. No. 2, Phila. Co., March T., 1897, Nos. 160 and 161, M. L. D., sustaining demurrer to plea in case of Philadelphia to use of Mack Paving Company v. Francis I. Gowen and James E. Hood, Trustees of James Gowen, Owners, etc., and James Gowen, Deceased, Registered Owner. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Scire facias sur municipal lien.

Defendants pleaded non assumpsit and filed a special plea which was as follows :

"And for a further plea, the said defendants, by their attorney, Charles Edward Ingersoll, say that plaintiffs should not recover, because the said Mount Airy avenue was, prior to 1890, paved with an artificial pavement of stone, which had been constructed by the Willow Grove and Germantown Turnpike Company, a corporation created by the act of assembly, approved April 12, 1853, entitled 'An act to incorporate a Plank Road Company from Willow Grove, Montgomery county to Germantown, Philadelphia county,' and that in the year 1890, the city of Philadelphia took possession of said turnpike road under proceedings to condemn the same brought under the act of assembly of the commonwealth of Pennsylvania, approved June 2, 1887, entitled 'An act authorizing the condemnation of turnpikes, roads or highways heretofore or hereafter con-

structed, wholly, or in part, in any county of this commonwealth, for public use, free from tolls and tollgates, and the assessment, upon the proper county, of the damages to which the owner or owners thereof may be entitled by a jury of viewers, duly appointed by the court of quarter sessions of the proper county, and providing for the maintenance of any such condemned turnpike, road or highway by the proper city, township or district.

"And the said city of Philadelphia, having taken possession thereof in the year 1890, entered upon the same, and thereafter, as required by the act of assembly aforesaid, maintained and repaired the said street as a paved street, by appropriations made under the general ordinances for paving and maintaining the other highways of the said city."

The plaintiff demurred to the special plea.

The court sustained the demurrer. [1]

At the trial the court admitted in evidence under objection and exception the books of the tax assessors of the city of Philadelphia, offered on behalf of the plaintiff to show that the premises in question had been classified for the purpose of taxation by the city of Philadelphia at city rates in the year 1896. [2]

Verdicts and judgment for plaintiffs for $2,025.24 and $2,161.42.

*Errors assigned* were (1) sustaining demurrer to plea; (2) ruling on evidence, quoting the bill of exceptions.

*Richard C. Dale*, with him *Charles Edward Ingersoll*, for appellants.—The law of the case may be found in two decisions of this court, Harrisburg v. Funk, 200 Pa. 348 and Philadelphia v. Eddleman, 169 Pa. 452. See also Dick v. Philadelphia, 197 Pa. 467.

The language of this 11th section of the act of 1887, it is submitted, fixes the duty and liability of the city of Philadelphia in respect to any turnpike road taken under it, and is, of course, as binding upon the city as its own covenant would be: Rhodes v. Mummery, 48 Indiana, 216; Protestant Orphan Asylum's Appeal, 111 Pa. 135.

The action of the real estate assessors, unless appealed from in the manner prescribed by law, is conclusive upon the prop-

erty owner for the purpose for which the assessment is made, to wit: fixing the percentage of taxation; but their books showing the terms of their assessment are not admissible as against the property owner for any purposes other than that for which the statute authorizes the assessment and the classification: Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279; Philadelphia v. Gorgas, 180 Pa. 296; Miller v. Windsor Water Co., 148 Pa. 429; Schuylkill River East Side R. R. Co. v. Stocker, 128 Pa. 233; Hennershotz v. Gallagher, 124 Pa. 1.

*Edwin O. Michener*, for appellee.—The fact that the city kept the property in repair after it had taken possession of it, in the same manner that it kept all other streets and roads throughout the city in repair, is not of itself sufficient to warrant the implication that it had adopted that style of paving as proper for this particular highway: Philadelphia v. Eddleman, 169 Pa. 452; Harrisburg v. Funk, 200 Pa. 348.

The tax books were proper evidence: Lukens v. Philadelphia, 13 W. N. C. 86; Philadelphia v. Gorgas, 180 Pa. 296; Craig v. Philadelphia, 89 Pa. 265.

OPINION BY MR. JUSTICE MITCHELL, May 19, 1902:

This was a municipal claim for paving the cartway in front of appellant's property, with vitrified brick. At the trial the defense was that the property was rural and not assessable for municipal improvements by the foot front rule. The plaintiff offered the record books of the board of revision of taxes to show that in the year in which the work was done the property was assessed for taxation as urban, at the full city rate. The evidence was admitted against defendant's objection. This was error. The books had none of the qualifications of evidence against the property owner for the purpose offered. While they were official, and made under the sanction of the official oath of the assessors, yet their relevancy and effect are derived entirely from the statute, and are confined to the purpose for which the statute authorizes them, to wit: the valuation of the property for the determination of its proper assessment for taxation. Unless appealed from they are conclusive upon the owner for that purpose and to that extent, but for all other purposes, as against him they are irrelevant ex parte entries not admissible in evidence at all.

It is argued that this court has treated such records as competent evidence, but the cases do not sustain this claim in its entirety.    In Lukens v. City of Phila., 13 W. N. C. 86, on the trial of a scire facias on a municipal claim, the defendant offered in evidence the classification of the property by the board of revision as surburban and asked the court to charge that such classification was conclusive against the city.    The court admitted the evidence and left it to the jury but refused to charge that it was conclusive, and this ruling was affirmed.

In Philadelphia v. Gorgas, 180 Pa. 296, the records were not offered as evidence of themselves but the assessor was called (and in this case also by defendant), to show from them an assessment of the property as rural.    The point in controversy however was whether the status of the property should be determined as of the date of the ordinance or of the work done.

In both cases the evidence was offered by the defendant, with the claim that as the assessment was made by the city's sworn officials charged with that duty, it was conclusive against the city.    It was held not to be conclusive.    While the testimony of the assessor as an expert might be admissible for either party, yet the competency of the records themselves as evidence at all, though not directly passed upon, could be sustained only on their offer by the defendant as in the nature of admissions against the city's interest by the city's officials. When offered by the plaintiff there is nothing in any of the cases to relieve the records of their character as ex parte entries or declarations in the city's own favor.    Their admission in the present case therefore was error.

A second branch of the defense was raised by special plea. Mt. Airy avenue on which the paving was done was formerly the Willow Grove and Germantown turnpike, and the plea averred that it was " paved with an artificial pavement of stone" prior to 1890, when it was taken by the city, by proceedings under the act of 1887, "and the said city of Philadelphia having taken possession thereof in the year 1890, entered upon the same and thereafter, as required by the act of assembly aforesaid, maintained and repaired the said street as a paved street, by appropriations made under the general ordinances for paving," etc.

To this plea plaintiff demurred and the court sustained the demurrer.

The act of June 2, 1887, P. L. 306, under which the city condemned and took the turnpike provided (sec. 11) " that when any turnpike or any portion thereof shall have been condemned under the provisions of this act for public use, free of tolls or tollgates, and the assessment of damages therefor shall have been paid by the proper county, such turnpike or portion thereof shall be properly repaired and maintained at the expense of the proper city, township or district, as other public roads or streets therein are by law repaired and maintained." The argument of appellant is that under this section, when the city took possession of the turnpike, it did so with a statutory recognition of the existing pavement no matter of what composed as a first pavement which prevents an assessment on adjoining property for any further cost of repaving as well as of repairs. This claim however cannot be sustained. The statutory obligation is to repair and maintain at the expense of the city, " as other public roads or streets therein are by law repaired and maintained." This provision, which simply put into express words what without it would have been necessarily implied, transferred the duty of maintaining the turnpike from the turnpike company to the city, but did not compel any change of existing conditions in other respects, or imply any recognition of the road as any other than the road it was before. The city may own, as in fact the city of Philadelphia does, common dirt roads and macadamized or other quasi paved roads, as well as fully paved streets, and the test of the right to charge abutting property for a first pavement is not the material with which the road was formerly covered, or the manner in which it was laid, but the municipal adoption or recognition of it as a pavement which converted a common road into a street. Philadelphia v. Eddleman, 169 Pa. 452.

It cannot be maintained therefore that the special plea showed as a matter of law from the condemnation and taking of the turnpike that the city thereby recognized it as a paved street. But the plea went further and averred, as already quoted, that the city has since 1890 maintained said street " as a paved street," etc. If this had been proved or admitted as a fact in a trial before a jury it would have been a complete

defense, for it would have brought the case directly within the rule of municipal recognition which under Philadelphia v. Eddleman, supra, and other cases, is the test of the right to assess abutting property for further paving.   Nor would such action by the city have been without precedent.   In Phila. v. Eddleman, supra, it is said, referring to certain important roads brought within the city limits by the consolidation act of 1854, " these the city might continue as ordinary though important and much traveled roads, and keep in repair as such until the proper time should arrive for the change, or on the other hand might recognize or adopt as streets sufficiently well paved for all the requirements of the present or near future.   And if the latter course was adopted as to any road or any portion thereof, no matter how or with what material it was paved, then it became a street as a result of such action, and the future growth of the city and necessity of a different pavement would not change its character or subject the abutting owners to charge for new paving.   The case of Allegheny Avenue, Phila., v. Ehret, 153 Pa. 1, is an illustration of this result."   In the present case the special plea averred as a fact that the city had adopted this second course as to Mt. Airy avenue, and the demurrer admitted the truth of the averment. This made out a complete defense, and it was error, therefore, to sustain the demurrer.

Judgment reversed, and judgment directed to be entered for defendant on the demurrer.