## JOHN A. STEES v. F. W. BERGMEIER.[1]

February 26, 1904.

Nos. 13,677—(188).

**End of Term—Increase of Rent.**

If, before the termination of a lease, a tenant is notified by his landlord that if he holds over he will be required to pay an additional amount as rent, he will be bound by the terms of the notification, and this is true even if the tenant objects to the new condition.

**Service of Notice.**

A notice of this nature was sent by registered letter addressed to the tenant at his usual place of business, on the leased premises. In the absence of the tenant, who was confined to his house by sickness, it was received and opened by his bookkeeper in the customary discharge of his duties. *Held*, that the notice was properly served.

**Statute.**

Laws 1901, p. 31 (c. 31), is not open to the objection that it is special legislation, forbidden by sections 33 and 34 of article 4 of the Constitution.

**Same.**

The leased property was urban in character, and within the provisions of said chapter 31 (Laws 1901, p. 31). The tenant, on his recovery and return to his office, remained in possession after his lease expired, paid rent by checks for six months at the rate fixed by the notice, which specified the new term at one year, and then vacated the premises. *Held*, taking the notice and the subsequent acts of the tenant together, that the "express contract" required by chapter 31, supra, had been entered into by the parties.

Appeal by defendant from an order of the district court for Ramsey county, Jaggard, J., denying a motion for judgment, notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiff for $76.20. Affirmed.

*Stevens, O'Brien & Albrecht,* for appellant.

*Oscar Hallam,* for respondent.

COLLINS, J.

This action was brought to recover rent from defendant for the month of January, 1903. He maintained that the tenancy was from month to

1 Reported in 98 N. W. 648.

91 M.—33

month, and that it was terminated by him in due form on December 31, 1902, while plaintiff, his landlord, contended that the tenancy was for one year, commencing June 30 of that year.

It appeared that in June, 1900, the plaintiff, as landlord, and defendant, as his tenant, entered into a written agreement or lease of the premises in question for a two-year period terminating June 30, 1902, the rent reserved being $50 per month for the first year and $55 for the second. June 25, 1902, the plaintiff mailed to the defendant a written notice that the rent of the premises

> "Will be $75 per month for the next year after the expiration of the term of the present lease of the same between us, to wit, after the 30th day of June, 1902, and that in case you hold over in possession of said premises beyond said time I will consider said premises held and taken by you at said rental of $75 per month, subject otherwise to the terms of said lease, each and every month payable in advance, on the 30th day of every calendar month."

This notice was sent by registered letter addressed to defendant at his usual place of business on the leased premises, and was received by his bookkeeper, who had charge of the office at the time. His duties were to open the mail, draw checks for regular accounts, and also for the rent as it fell due. At this time defendant was confined to his house with a serious illness, and was kept away from the office from April 24, 1902, to some time late in September of the same year. It was not shown that he had any knowledge of this notice until after his recovery and return to the office. But he continued to occupy the premises until December 31, 1902. For the months of July, August, and September the plaintiff sent bills monthly for rent to defendant at $75 per month, the first being mailed July 3. August 5, defendant's check for $55 was mailed to him, marked "In full to 31st of July, 1902." Plaintiff thereupon wrote defendant that he would accept check on account for $55, but would not accept it in full for rent in advance due June 30, 1902.

> "If that is not satisfactory your check is here subject to immediate order. If no reply received by return mail to this letter, I will credit your account with $55, using this check after crossing out "in full to 31st of July, 1902."

And again calling attention to the notice of June 25, and threatening suit if payments were not made in accordance therewith.

After defendant returned to his office, in October, 1902, he paid the balance due for the months in dispute, $20 upon each month, and there-after paid by check at the rate of $75 a month for October, November, and December.    November 29 he gave written notice that his lease upon the premises would expire December 31, and he then removed there-from.

1. It is argued that through the notice, of date June 25, increasing the rent to $75 per month, and defendant's subsequent acts, an express contract was entered into which brought the case within the operation of Laws 1901, p. 31 (c. 31) which as to urban property changed the law of the state, as previously announced by the courts, in respect to the effect of a holding over of such property by a tenant, and this claim not only involves the acts themselves, but also the question of the service of the notice upon defendant, who, as before stated, was absent from his office at the time it was received by mail.

While personal service is always best in such cases, because much more direct and certain, it is not expected to be given unless practicable, and a notice of this kind may be effectually served upon a tenant, who has a place of business upon the leased premises, by leaving it at such place of business with some one in charge, of suitable age and discre-tion.    In this particular case it was received by the person in charge of defendant's business on the leased premises while he was confined, at his house by illness.    The mode of service adopted was the most prac-ticable and best under the circumstances, and it was sufficient, but, had it not been, the notice reached the defendant upon his return to the office after his illness, and with a little delay and some correspondence he assented to the proposition to pay the additional rent by sending his checks for the balance due for the months in dispute at the rate of $75 per month, and also for October, November, and December at the same rate.    This not only proved that he had received the notice, but also that he assented to the proposition made by his landlord that the rent should be increased if he held over.    If, before the termination of a lease, a tenant is notified by his landlord that if he holds over he will be required to pay an additional amount as rent, the tenant will be bound

by the terms of the notification, and this is true even if he objects to the increase. 18 Am. & Eng. Enc. (2d Ed.) 408, and cases cited.

2. The object of chapter 31 was to do away with the harsh rule whereby, at the option of the landlord, a tenant could be held for another term by holding over for a single day. Its purpose was to require a new agreement, an "express contract," between the parties being demanded. No particular form of an express contract was prescribed nor contemplated. Contracts are express when their terms are stated by the parties in writing or verbally. In this particular case the landlord fixed the terms in his written notice at $75 per month for the year following the expiration of the two-year term fixed by the lease, and he also gave notice that if the tenant held over he should consider the premises taken and held at such rental for one year. To this proposition the tenant did not promptly assent, but he expressly accepted it when he held over and paid rent at the increased rate for six consecutive months. Such acts clearly constitute an express contract, for the terms were stated in writing by the landlord and acceded to by the tenant. Raubitschek v. Blank, 80 N. Y. 478. See also Hooker v. Hyde, 61 Wis. 204, 21 N. W. 52.

3. Counsel for respondent has raised the question that chapter 31, supra, is unconstitutional, arguing that it is special legislation, and not uniform in its operation throughout the state, the exact point being that it is limited in its operation to urban property only, and that this attempted classification is not a proper one. While it is not absolutely necessary, in order to dispose of the case, we hold the statute not open to this objection.

The distinction between urban property and rural property is well understood. Urban real estate is that situated in a city, or a town resembling a city, while rural real estate is that located in the country, in an agricultural district. The common law recognizes the distinction, and so does the fundamental law of our state (Const. art. 1, § 15), and it has also been noticed in the opinions of this court (Johnson v. Albertson, 51 Minn, 333, 53 N. W. 642; Kiewert v. Anderson, 65 Minn. 495, 67 N. W. 1031. The classification is a proper one, and the following excerpt from one of our opinions is especially applicable: "The rule has been definitely settled, for this state at least, that a law will only be declared void on this ground when it makes arbitrary and un-

natural distinction between the objects to which it is intended to apply and others of the same kind in substantially the same situation; but if the classification be one already existing, or founded on legitimate differences in situation, population, or recognized or inherent conditions, the legislation will be valid as to those objects within its purvew." State v. Walker, 83 Minn. 295, 86 N. W. 104.

Order affirmed.