# CHARLESTON.

CAVENDISH *v.* BLUME COAL & COKE COMPANY *et als.*

Submitted February 20, 1912.   Decided June 24, 1913.

SCHOOLS AND SCHOOL DISTRICTS—*Sale of School Lot—Rights of Original Owners.*

A lot in a village though not incorporated conveyed to a board of education by absolute deed with general warranty is within the exception of section 33, chapter 45, Code 1899, and the grantor of such lot, who has previously sold and conveyed his adjoining lands, of which such lot was originally a part, to another, is not entitled to a cancellation of the deed for such lot from such board to the same grantee, and to a reconveyance thereof to him by virtue of said statute. (p. 648).

Appeal from Circuit Court, Fayette County.

Bill by J. F. Cavendish against the Board of Education of the District of Nuttall and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*Wyatt & Graham,* for appellant.

*Dillon & Nuckolls,* for appellees.

MILLER, JUDGE:

Plaintiff sues for cancellation of a deed from the Board of Education of Nuttall District, Fayette County, to Blume Coal & Coke Company, a co-partnership, dated April 13, 1908, in so far as it relates to a school house lot at the village of Lookout, and for a reconveyance thereof to him by said board, by virtue of section 33, chapter 45, Code 1899, in force at the time the deeds now to be referred to were made.

This lot as alleged had been previously conveyed by plaintiff to said board of education, by two deeds; the first calling for about a half acre, was lost and never recorded, but the bill alleges it was made in 188—; the second, dated May 1, 1897, calling for a lot adjoining the first, is described by metes and bounds as a lot 4 poles wide by 11½ poles in length, and recorded July 25, 1898. By Act of 1905, said statute was amended, and as now contained in chapter 45, Code 1906, no such right of reconveyance is preserved.

In the deed sought to have cancelled this lot, covered by both deeds, is described as containing ".69 of an acre." The consideration recited in the second deed is ten dollars paid; it is absolute in terms, without reservation, and with covenants of general warranty. The bill alleges the consideration for the first deed was one dollar, and it is not alleged or pretended that it contained any terms of defeasance or reservation. The answer of Blume Coal & Coke Company, and of the Board of Education, deny this and affirm that it was "possibly as much as $25.00." If the fact is material, and we do not think it is, plaintiff has not made out a case of nominal consideration only. But for the right alleged to be conferred by the statute no ground for relief is alleged or made to appear.

Said section 33, of chapter 45, Code 1899, excepts from the provision giving right of reconveyance to a grantor, lots situated within any village, town or city. The answer of defendants, Blume Coal & Coke Company, deny that said lot is not situated within any city, town, or village; on the contrary they allege that it is situated within the village of Lookout, and by the terms of the statute expressly excepted from the provision

giving right of reconveyance. They also deny the said lot has been abandoned, and allege that it was simply exchanged for a larger and more commodious lot in the same vicinity and for a cash consideration of $200.00, paid by respondents, and on which exchanged lot said board has erected a school building costing $3,000.00.

After so responding to the matter of the bill, it is alleged as ground for the affirmative relief prayed for, that admitting the general right of reconveyance given by said statute, plaintiff, by deed of March 1, 1902, had conveyed to Blume Coal & Coke Company all his adjoining lands, and out of which said school house lot was taken, and other lands, and had thereby also relinquished, sold and conveyed to said coal company all reversionary rights and interests therein.

The prayer of said answer was that it may be treated as a cross bill against plaintiff, and that he be required to convey to respondents his interest in said lot upon the payment to him of $10.00 tendered therefor, as per contract in said deed.

Plaintiff replied generally to said answer, but made no answer to the affirmative matters thereof; and the depositions taken by him in relation thereto, were excepted to, and in the final decree appealed from said exceptions, though not specifically passed upon, are noted, and the decree was that plaintiff be denied relief, and his bill dismissed, but that the affirmative relief prayed for by the Blume Coal & Coke Company be granted, and the decree so provided.

The provision of the deed relied on, a copy of which is exhibited with the bill, is as follows: "The said J. F. Cavendish and wife covenant with the parties of the second part that they have heretofore sold to various parties certain small tracts or lots of land adjoining to and lying near the property hereby conveyed, which said parties have not paid the said J. F. Cavendish all the purchase money due thereon, and the said J. F. Cavendish hereby covenants and agrees with the said parties of the second part that in the event the said parties fail to pay for the said lots or parcels of land, and the title thereto reverts back to the said J. F. Cavendish, or if for any reason the said J. F. Cavendish cures the title to said tracts or lots so sold by them, as aforesaid, then, and in that event, he agrees to grant and convey the said tracts of land, or so much of them as he may secure title

thereto, to the said parties of the second part, the said parties of the second part to pay the said J. F. Cavendish the same price, with accrued interest thereon, which had been agreed to be paid by the parties to whom J. F. Cavendish sold."

A number of interesting questions are presented and argued by counsel; but if said lot at the time of the suit was situated in a "village," as on the evidence we think it was, then, by the very terms of the statute no right of reconveyance existed, and relief was rightly denied plaintiff, and his bill was properly dismissed, and we need not consider any other question.

But it is contended that as chapter 47, of the Code, providing for the incorporation of cities, towns and villages, was in force at the time section 33, chapter 45, was enacted, and on the theory that said section was enacted to encourage persons in the country to donate land for school house sites, the word "village", employed in connection with words "cities" and "towns," should be construed to mean incorporated villages. Even if that may have been one of the purposes of the statute, we do not think it was the only or main purpose; and if it was, it failed in this case, for the evidence shows that the lot was not a gift or donation, but that a full money consideration was paid for it. This court, in *Carper* v. *Cook,* 39 W. Va. 347, said, respecting this statute: "This is a concession of the law to those living in farming communities, that a small portion of a farm may not be taken for school purposes and then be allowed to pass into the hands of a stranger, to the damage of the residue of the land; and the grantor must make his election promptly, before the rights of third parties attach, by a re-payment of the purchase-money and a demand for a re-conveyance. If such demand is refused, even though made in time and in a proper case, the right could not be enforced by an action of ejectment." The word is not defined by the statute. The general rule in the construction of statutes is that unless a different meaning is given or plainly and necessarily implied from the context, the words of a statute are to be given their usual and ordinary meaning. Chapters 45 and 47 of the Code do not relate to the same subject; the first relates to education; the latter to the incorporation of cities, towns and villages. They are not in *pari materia.* Webster defines village, "an assemblage of houses in the country, less than a town or city, and inhabited chiefly by farmers

and other laboring people," and so far as we have been referred to or have found other authority on the subject, judicial or otherwise, this definition is universally recognized as the correct one.   In confirmation we refer to 8 Words and Phrases, 7321-2. In *Toledo, W. & W. Ry. Co.* v. *Spangler,* 71 Ill. 568, 569, one of the cases referred to, it is said:   "A place where there is a station house, a warehouse, a store, a blacksmith shop, a post-office, and five or six dwelling houses, whether they are situated upon regularly laid out streets and alleys or not, comes fully up to the requirements of a village, for the purpose of excusing a railroad company from fencing its track within the limits thereof."   In *Territory* v. *Stewart,* 23 Pac. 405, 406, 1 Wash. St. 98, 8 L. R. A. 106, another case, it is said:   Villages and towns, as used in Act Wash. T. Feb. 2, 1888, authorizing the incorporation of towns and villages, and not defining the meaning of the term, will be presumed "to be used in their ordinary acceptation, as meaning an aggregation of houses and inhabitants more or less compact."   The record of this case shows that plaintiff himself opened up coal mines in or near the village of Lookout, developing his lands in that vicinity, and by his efforts the village was partially built up.   These lands and coal properties he sold and conveyed to the Blume Coal & Coke Company.   If he should succeed in this suit on his own theory, he would defeat one of the very purposes of the statute which he invokes, as interpreted by this court in the case above referred to.   According to the evidence there is located in the immediate locality of the original village of Lookout some twelve or fourteen houses, including a church, blacksmith shop, and three stores, inhabited by seventy five or eighty people; and the new school house erected near by serves a population of five or six hundred people, living in houses near to and really constituting parts of said village.   These houses are located near cross roads, some on both sides of the James River and Kanawha Turnpike, an old State road.   The town or village is a mining town it is true, and many of the houses belong to and are located on the coal company's lands, but we think this is one of the class of villages covered by the statute, and on this ground that plaintiff has no right to a reconveyance of the property.   Moreover, having conveyed his farm and property to the coal company, it may be questionable, whether his conveyance, regardless of its

special provision respecting other lots, did not carry with it the right of reconveyance given by the statute. But we need not and do not decide this question.

But what about the affirmative relief decreed Blume Coal and Coke Company? Strictly speaking we question whether such relief was well grounded on the theory of the cross answer that the special provision of the deed from plaintiff to the coal company, above quoted, gave that right. But we are clearly of the opinion on facts alleged and admitted, that a claim and decree for affirmative relief, based on the fact of the lost deed, alleged and proven, and right of restoration thereof, would have been well founded. On such a cross answer or bill the relief would have been substantially the same as that decreed on the theory of the cross answer filed. *Wade* v. *Greenwood,* 2 Rob. (Va.) 474, 40 Am. Dec. 759. Plaintiff was requested, before suit, to join in the conveyance of the board of education to the coal company to restore that deed, and complete the record, but declined. As no costs are decreed against him on the cross answer, or in relation to the execution of the deed decreed to be executed by him, or on his default by a commissioner appointed for the purpose, and he is not injuriously affected or prejudiced by any error in the decree, we are not disposed to reverse it, for any error therein, in decreeing such cross relief.

For these reasons the decree below will be affirmed.

*Affirmed.*