City of Phila. to Use *v.* Brady, Appellant.

80

Argued October 7, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-
NINGHAM and BALDRIGE, JJ. KELLER and
GAWTHROP, JJ., dissent.

*Joseph R. Embery,* and with him *John Whitaker Lord, Jr.,* for appellant.—A city cannot file liens for building a sewer through a sixty-four acre farm actually used as a farm at the time the sewer is built: Gilham v. R. E. I. & T. Co., 203 Pa. 24; McKeesport v. Soles, 165 Pa. 628; Philadelphia v. Gorgas, 180 Pa. 296.

In scire facias proceedings to enforce a municipal lien, the records of the city assessor are admissible in evidence to establish the classification of the property: Craig v. Philadelphia, 89 Pa. 265; Girard Trust Company v. Philadelphia, 248 Pa. 179.

*Glenn C. Mead,* and with him *Duane, Morris & Heckscher,* for appellee, cited: Philadelphia to Use v. Gowen, 202 Pa. 453; McKeesport v. Soles, 178 Pa. 363; Philadelphia to Use v. Dobbins, 24 Pa. Superior Ct. 136.

OPINION BY CUNNINGHAM, J., December 16, 1931:

These three appeals were taken by Charles P. Brady, the owner of a tract of land in the 35th Ward of the City of Philadelphia, from the judgments entered by the court below upon verdicts rendered against him in scire facias proceedings to enforce municipal liens for the construction, under the authority of the city, of a main sewer in streets opened through his land.

As the issues were identical, the cases were tried, and the appeals argued, together; they may therefore be considered as a single case and disposed of in one opinion. Appellant submitted a point for binding instructions but did not move for judgment n. o. v.; his contention, defined in eleven assignments, is that a new trial should be directed because of trial errors. The assignments need not be considered seriatim; they are based upon alleged errors in the charge, in disposing of his points, and particularly, in excluding certain offers of evidence. The issue under the pleadings, and as submitted to the jury, was whether the property in question was rural or urban, as only in the latter case would it be subject to assessment by the foot front rule for the cost of constructing the sewer.

Throughout the trial it was suggested in behalf of appellant that three classifications of land should be taken into consideration—rural, suburban and built up city property. The trial judge ruled, and we think properly, that for the purposes of this case but two classifications could be considered—rural and urban —and that "if the land is urban land, is city land, the sewer ...... benefits it to the extent of the assessment" and the purpose of the city in constructing it was immaterial. Appellant's complaint with relation to the refusal of points for charge is illustrated by his seventh assignment charging error in refusing a point reading: "If the jury find that defendant's

property comprised about 65 acres and consisted of a strip of ground with a frontage of approximately 500 feet on Oxford Avenue and extending back about 4,000 feet with no intersecting streets except these three streets (Montour, Princeton Avenue and Tabor Avenue) extending for one square each in a zigzag manner across the property and that at the time these streets were opened and this sewer built the property was used as a farm property by the tenant under lease from defendant your verdict should be in favor of defendant.'' It was strongly urged that appellant's property was actually being used as a farm at the time the sewer in question was built, and therefore could not be classified as urban for the purpose of making sewer assessments.

In our opinion the point was correctly refused, since it does not correctly state the law upon the subject. Concededly, if the property was in fact rural it could not be assessed according to the foot front rule. On the other hand, the test to determine whether a property is rural is not whether the plot itself is used for rural or farm purposes, but whether it is rural in view of the neighborhood in which it is located. It is possible that a property may be used as a farm and yet be situated in the center of what is essentially an urban district. To exempt such a property from assessment for sewers and the like is to work an unjust discrimination against neighboring owners and to obstruct the proper course of civic development. Consequently, it has been universally held that the property sought to be charged is not to be considered as an isolated plot of land, but should be classified as rural or urban according to the general character of the neighborhood in which it is situated. The leading case on this subject is that of City of McKeesport v. Soles, 178 Pa. 363. The charge delivered in the trial of that case was approved by the Supreme Court, has

been repeatedly cited and consistently followed, and must be accepted as the law. It was there said (pp. 365, 366): "The land in this case is farm land. Mrs. Soles has a farm of fifty or sixty acres, which fronts on this avenue one thousand and sixty-three feet. It has always been used as farm land, either for cultivation or for pasture, and is not laid out into lots. That is proved here and is admitted; but those facts do not decide this contention. ...... The question is: Is it rural in the sense that it is not liable under the law to be assessed for the improvement of the street? It is very difficult to give a clear definition of what is to be considered rural property, in contradistinction from city property, so as to be exempt from liability or assessments for street improvements. The character of the locality, the streets, lots, buildings and improvements, and the market value of the property, as also of the neighboring and surrounding properties, must be considered. Whether the particular property in dispute is to be considered rural or city, depends largely upon its surroundings and the character of the property in the neighborhood. If the buildings and improvements in the neighborhood are few and scattered; if they partake of the character of the country rather than of the city or town, and are occupied by persons engaged in rural pursuits, the locality should be considered rural. On the other hand, if the houses and improvements partake of the character of the city or town and are mainly occupied by persons engaged in city pursuits, the locality should be considered as city and not rural. A locality which is laid out in small lots, of the usual size, for city or town lots, and partly built upon with city improvements, such as paved streets, gas or water pipes, should be considered in the class of city property. There may be in the city a square or several squares or several acres of ground used only for pasture or growing crops, yet,

if in the midst of a business part of the city, it would be treated as city property, liable to a street assessment. In a large city there may be thriving villages or suburbs some distance from the main body of the city, with large farms intervening on both sides of the street. In such cases the villages or suburbs would be considered as city property and the farms as rural, but if the intervening territory be devoted to fine residences ornamented with trees and shrubbery and occupied by business men of the city, it would be classed as city property. If the property on one side of the street be built up, or considerably built up, with residences, factories or other places of business, the vacant lots or farm land immediately across the street should as a general rule be considered city property. The owner on one side of a street may hold back until the land on the other side is divided into lots, sold and built upon, thus having his property greatly enhanced in value, and if not liable to an assessment for the improvement of the street, he would derive an unjust advantage over the other property owners.'' See also in this connection Borough of Cheswick v. Stuart, 94 Pa. Superior Ct. 101; Montoursville Borough v. Eck, 91 Pa. Superior Ct. 409; and Philadelphia v. Manderfield, 32 Pa. Superior Ct. 373. The point was not a correct statement of the law, and the case was properly submitted to the jury to determine, under all the evidence, whether the property was rural or urban. Moreover, it may be said that the finding was fully justified. An examination of the testimony and of the accompanying maps shows that, although the tract itself was used for farm purposes, the property surrounding it on three sides had been developed as an urban community, in which streets had been laid out, graded and paved, rows of dwellings erected, and sewerage, gas and water systems laid down. In this development appellant's vacant property stood out in

strong contrast. No legally sound reason was shown against requiring it to share in the burdens borne by the surrounding locality.

Another error alleged was the exclusion as evidence of appellant's tax receipts and the tax assessment books (offered to be supported by the testimony of the real estate assessor who made up the books), all of which were offered for the purpose of showing that at the time the sewer was built appellant's property (and other property in the immediate neighborhood) was assessed for purposes of taxation "as rural or suburban property, and at the rural or suburban rate," as distinguished from full city rates. This evidence was properly rejected. The jury had ample competent evidence from which to determine whether the property was rural or urban, and the records of the assessor, and his proposed testimony, were inadmissible. It is appellant's contention that these records were made by officials of the city, and should therefore be considered as admissions by it as to the character of the property. This argument has been definitely answered by the Supreme Court in Girard Trust Co., Trustee, v. Philadelphia, 248 Pa. 179, a case involving the determination of damages arising from the taking of land by the city under its power of eminent domain. The plaintiff in that case sought to introduce certain tax assessments as an admission made, or at least adopted, by the city against its interest in respect to the value of the land. It was held that such evidence was inadmissible, the court saying (p. 181): "The answer to the argument that the city made the assessments is to be found in the recent case of Selig v. Philadelphia, 232 Pa. 309, where the method of assessing taxes in Philadelphia is elaborately discussed and it is ruled that such taxes are assessed by a 'State Agency' under a system established by the Commonwealth and administered through public officers (see Richie v.

Philadelphia, 225 Pa. 511, 516) appointed by 'a State Department whose rulings are subject to appeal....... to the courts of the Commonwealth,' and that the city officials have no jurisdiction in the matter whatever. As to the theory of adoption, we see no merit in the argument that, because the city received taxes based on these assessments and they were used in determining its borrowing capacity, the municipality in effect adopted them as an expression of its own estimate of the value of the plaintiffs' land; for no corporate body can properly be held to have adopted the action of another independent public agency by merely giving such recognition thereto as the law compels it to render.'' If such assessments are inadmissible for the purpose of showing the valuation placed upon a property, they are equally inadmissible to show the classification under which it has been placed by the assessor and the rates—whether rural, suburban or full city— at which it has been assessed.

Certain earlier decisions of the Supreme Court cited by appellant cannot be accepted as authority for his proposition. In Lukens v. Philadelphia, 13 W. N. C. 86, the lower court refused to charge that the assessment was conclusive evidence of the character of the property, and this action was affirmed on appeal. The general admissibility of such evidence was not raised or considered. Similarly, in Craig v. City of Philadelphia, 89 Pa. 265, the sole point of the decision was that it was unconstitutional to assess rural property upon the foot front rule, and the admissibility of tax assessment books was not directly ruled upon. In Philadelphia v. Gowen, 202 Pa. 453, a proceeding on a municipal claim, it was held error to allow the city to offer tax books in evidence to show the property was assessed as urban. The court said in this regard (p. 456): ''The books had none of the qualifications of evidence against the property owner for the purpose

offered. While they were official, and made under the
sanction of the official oath of the assessors, yet their
relevancy and effect are derived entirely from the
statute, and are confined to the purpose for which the
statute authorizes them, to wit: the valuation of the
property for the determination of its proper assess-
ment for taxation. Unless appealed from they are con-
clusive upon the owner for that purpose and to that
extent, but for all other purposes, as against him they
are irrelevant ex parte entries not admissible in evi-
dence at all.'' It is true that the court in referring to
the earlier decision in Lukens v. Philadelphia, supra,
said (p. 457): ''...... the competency of the records
themselves as evidence at all, though not directly
passed upon, could be sustained only on their offer
by the defendant as in the nature of admissions against
the city's interest by the city's officials.'' This, how-
ever, was dictum, not essential to the decision, as the
underlying objection, that the assessment books are
evidence relevant only in issues relating to taxation,
is equally applicable against either party to a cause
involving another issue. In any view, the decision in
Girard Trust Co. v. Philadelphia, supra, is conclusive
on the point that the records are not made by of-
ficials of the city, and it is worthy of note that the
opinion in that case shows that Philadelphia v. Gowen
was considered by the court. As already intimated,
the portion of the charge in which the learned trial
judge, GORDON, J., stated that if the property was
urban it was presumed to be benefited by the sewer
to the extent of the assessment was likewise a correct
statement of the law. It is true that no such assess-
ment can be made if the property is found to be rural
but, if it is determined to be urban, the property owner
cannot defend on the ground that his property is not
benefited by the improvement. The decision of the city
authorities on this point is considered as conclusive.

See Philadelphia v. Phila. and Reading Railroad Co., 1 Pa. Superior Ct. 236; and South Fork Borough v. Penna. Railroad Co., 251 Pa. 261, 267. As was said in the early case of Michener v. City of Phila., 118 Pa. 535 (pp. 540, 541) : ''Of the necessity of the present sewer we cannot, of course, speak, nor are we required to do so. The councils are the sole judges of the necessities of sewers and their judgment is conclusive. ...... But this is a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly of the taxpayer or his property. ...... When a man comes to pay his general taxes he cannot be permitted to allege that he derives no benefit therefrom. And it would be intolerable if in every instance of special taxation the question of benefits could be thrown into the jury box. It would introduce into municipal government a novel and dangerous feature. It would substitute for the responsibility of councils, limited though it be, the wholly irresponsible and uncertain action of jurors.'' This also disposes of appellant's contention that the court should have allowed him to read into the evidence certain portions of the affidavit of defense alleging that the sewer in question was a main sewer intended to benefit residents living some distance from his land. Apart from the fact that the reply declared the sewer was ''constructed for the purpose, inter alia, of benefiting the abutting property owners on Princeton Street including the defendant,'' the matter was immaterial since benefit is presumed.

As the record presents no reversible error, we overrule all the assignments.

The judgments are severally affirmed.