257 S.E.2d 175 (1979)
Letha D. STEPHENS et al.
v.
The RALEIGH COUNTY BOARD OF EDUCATION.
Donald H. AKERS et al.
v.
The BOARD OF EDUCATION OF the COUNTY OF WAYNE, etc., et al.
Nos. 14292, 14424.
Supreme Court of Appeals of West Virginia.
July 16, 1979.
*176 Carl L. Harris, Gordon Billheimer, Billheimer & Harris, Montgomery, for Stephens et al.
James W. St. Clair, Marshall & St. Clair, Huntington, for Fred Powell.
C. Elton Byron, Sparacino, Byron & Abrams, Beckley, for Raleigh County Board of Education et al.
Kenneth H. Fisher, Huntington, for Donald H. Akers, et al.
McGRAW, Justice:
These appeals, presenting the same issue for resolution, have been consolidated for decision. We are called upon to construe a statute which provides in general terms for the means by which a county board of education *177 may dispose of property. Our specific concern is with a provision which gives the grantor of the property (or his heirs or assigns) the right to repurchase that property if it is located in a rural community.[1]
The sole issue here presented concerns the definition of the term "rural community" as used in the statute. In each of the cases below, proceedings were initiated in circuit court to establish the right to repurchase after that right had been denied at public sale. Both cases were tried before the respective circuit courts, sitting without a jury.[2]
The Stephens case involves a three acre tract in Raleigh County which was originally conveyed to the Raleigh County Board of Education in August of 1956. Proceedings were initiated in the Circuit Court of Raleigh County by Letha Stephens and Shirley Kessler, wife and daughter of the original grantor, after the right to repurchase had been denied them at a public sale in June, 1976. In their petition, Ms. Stephens and her daughter sought an injunction restraining the Raleigh County Board of Education from conveying the property to any person other than themselves, and a writ of mandamus requiring the Board to execute a proper deed conveying the property to them.
The tract involved is not within the incorporated limits of any municipality, but lies outside the City of Beckley, about one mile from the city limits of Mabscott and within one mile of at least one residential subdivision. The area is served by rural mail delivery and has been zoned by the Raleigh County Commission as residential. The immediate vicinity contains two farms and a number of residences built in recent years. At the time of the public sale in 1976, it appears that there was no substantial commercial development in the area. The price paid by the Board in 1956 was $5,000.00. At the public auction in June, 1976 a high bid of $42,500.00 was accepted by the Board of Education.
Upon this evidence, the Circuit Court of Raleigh County, Berkley Lilly, Judge, ruled that the petitioners had not met their burden of proof in establishing the existence of a rural community and denied the relief sought.[3] The ruling of the court was *178 premised upon a definition of "rural" as connoting a sparsely populated area with a large percentage of the land being left in its natural state or devoted to some aspect of farming or agriculture.[4] It is from this ruling that Letha Stephens and Shirley Kessler appeal.
The Akers case involves a tract originally acquired by the Ceredo District Board of Education, predecessor of the Wayne County Board of Education in September of 1925.[5] Proceedings in the Circuit Court of Wayne County were commenced by Ada Belle Akers and Donald H. Akers, daughter and grandson of the original grantors, after Donald H. Akers was denied the right to repurchase the tract at a public sale in March of 1977. The petitioners there sought a decree establishing their rights in the property, and such further relief as the court deem just and proper. Upon its own motion the court below made Mr. Fred Powell, the high bidder at the public sale, a defendant in the action and required that he answer the petition.
At trial, evidence was submitted which showed the subject tract to consist of slightly more than one and one-half acres in Wayne County. The tract is not within the city limits of any municipality, but lies within two to three miles of the nearest incorporated town, that being Kenova. The tract lies approximately one and one-half miles from a residential subdivision known as Pine Hills. While some of the area adjacent to the tract is used for farming and agricultural purposes, there are four large industrial plants within one-quarter to one-half mile of the tract, and there has been rather extensive residential development throughout the area. The price originally paid for the property in 1925 was $1,500.00. At the public sale in March of 1977 a high bid of $16,500.00 was made by appellant Fred Powell and was accepted by the Wayne County Board of Education.
Based upon this evidence and "personal knowledge" of the area involved, the court below, C. W. Ferguson, Judge, granted the relief sought by Ada Belle Akers and Donald H. Akers. An order was issued enjoining the Wayne County Board of Education from conveying the property to Mr. Powell, and further requiring that the Board execute a deed conveying the property to the petitioners. The court specifically stated that it was inescapable that the area was considered by all persons to be rural, and that the ruling was premised upon a finding of fact. It is from this ruling that Fred Powell, the high bidder at the public sale and the defendant below, has appealed.
In each of these cases, the respective circuit courts apparently used as a basis for their decision the character of the immediate area in which the property was located. While this is a factor to be considered along with others, it is not dispositive of the issue. The statutory language clearly indicates that it is the character of the entire community in which the property is located that will control the right to repurchase. The Court accepts the definition of Judge Lilly in the Stephens case of "rural" as connoting a sparsely populated area with a large percentage of the land being left in its natural state or devoted to some aspects of farming *179 or agriculture, and we will elaborate thereon. However, neither circuit court based their decision on the dominant character of the community as a whole. Therefore, each case is reversed and remanded for further proceedings and additional evidence in accord with the standards defined herein in order that a proper record may be made and a proper order entered  consistent with this opinion.

I.
In defining the term "rural community," we look to the purpose of the statute and the intent of the Legislature. We profit from this Court's opinion in the case of Carper v. Cook, 39 W.Va. 346, 19 S.E. 379 (1894), decided much closer than we to the time of enactment of the original repurchase statute. In that case, the Court, considering the language and purpose of the statute then in effect,[6] termed the provision "a concession of the law to those living in farming communities, that a small portion of the farm may not be taken for school purposes, and then be allowed to pass into the hands of a stranger, to the damage of the residue of the land."[7]
Carper indicates that the thrust of the statute was a protection of farm interests. The repurchase privilege was designed to protect the interests associated with rural estates; that is, the preservation of "home places" and operative agricultural units. The statute was not intended to preserve unto future generations a windfall profit realized because of adjacent development.
An area which has been subdivided or prepared for development or lot sale will, therefore, not meet the requirements for classification as a "rural community." In such a case, there is no legitimate interest to be protected, or goal to be served, by allowing repurchase. It is immaterial whether such development has occurred before or after conveyance of the tract to the board, so long as it has altered the dominant character of the community at the time when the right to repurchase is asserted. See, Cavendish v. Blume Coal and Coke Company, 72 W.Va. 643, 78 S.E. 794 (1913).
Consistent with legislative intent, no incorporated city, town or village should be included in the class of rural communities, for the reason that such communities are inherently urban in character as a condition of their incorporation.[8] Similarly, no other built-up incorporated area which would qualify for incorporation in terms of absolute population and population density may be included as a rural community. Cavendish v. Blume, supra.
With such a specific definition of "urban" having been supplied by the Legislature, the difficulty will lie not in distinguishing rural communities from urban ones, but in distinguishing rural from predominantly suburban communities. A suburb cannot, by definition, be a rural community. Rather, a suburb is a component part of an urban community. It is merely an outlying part of the city which may be used for business or residential purposes, or a district adjacent to the city that is convenient to use as a place of residence for persons working therein or for the location of plants and stores. See Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871 (1948), and cases cited therein. In a suburban community *180 the residents live where they do because of its proximity to the city. Their social, cultural, economic and political interests lie in the city. They are urban people, and their community is of an urban character, even though it may lie several miles outside the corporate limits of any municipality.
On the other hand, a rural community is, by definition, completely unrelated to an urban or metropolitan area. Stees v. Bergmeier, 91 Minn. 513, 98 N.W. 648 (1904). Compare, City of McKeesport v. Soles, 178 Pa. 363, 35 A. 927 (1896); City of Philadelphia v. Brady, 104 Pa.Super. 79, 157 A. 694 (1931). In repairing to traditional definitions, we develop a sense of the term "rural" as connoting an area which is dominated by an agrarian style of life.[9]
Thus, a "rural community" may be distinguished by its dominant character as a social and economic unit founded in rural, land-based interests. It is inhabited, in the main, by country people, who live a country life, and who engage in country pursuits. Its residents are removed from the immediacy of urban and suburban environs, and are not immediately tied to any city or urban area; they work, socialize and politick as an independent, integral community. There will, of course, always be some exceptions. In nearly every community there will be at least a few people who commute to a city for business or social purposes. However, the presence of a few such people does not destroy the rural character of a community, so long as development has occurred in such a manner as not to exclude the predominance of agricultural pursuits and rural activities.
In summation, the guiding criterion will be the dominant character of the community as a whole. In order to qualify as a "rural community" for purposes of the repurchase statute, a community must be sparsely populated; it must not meet the qualifications for municipal incorporation; it must be dominated by a country style of life and a rural, land-based economy; and it must be free, in the main part, from urban influence and suburban population.

II.
It is the opinion of some members of the Court that the statute here construed is constitutionally defective in that it denies certain persons equal protection of the law. While we understand the rationale of such a position, we are not today prepared to say that the Legislature's accommodation to residents of rural communities constitutes unconstitutional discrimination.
The Federal Constitution does not censure a state for allowing privileges to one group of persons while declining them to others, where the segregation of benefits has a reasonable purpose and embodies a reasonable means of achievement. So long as the classification is rationally based upon social, economic, historic or geographical factors there is no violation of the equal protection clause.[10]
We cannot say that the classification of "rural community" embodied in the statute is an unreasonable one. It has always been the policy of the State of West Virginia to encourage rural and agricultural endeavors,[11] and, indeed, this policy is a desirable *181 one. The classification upon which the Legislature has premised the privilege involved here is a natural one, recognized throughout the history and jurisprudence of our State and Nation. Despite recent trends of urbanization and industrialization, the tilling of the earth remains the highest and best use to which land can be put. It is impossible to conceive of a more fundamentally important endeavor than the cultivation and harvest of food for the maintenance of the race.
Considering this policy favoring agricultural pursuits, and the relation of this statute to that purpose, Carper v. Cook, supra, we cannot say that the Legislature has acted in invidious fashion. The preservation of land fit for agriculture-related uses is a legitimate state goal. See, Tigner v. Texas, supra. The means chosen by the Legislature appears reasonably calculated to preserve the rural character of non-urban communities and thereby accomplish this proclaimed legislative purpose.[12] That is all that the Constitution requires.
An issue has also been raised on appeal concerning whether Donald H. Akers was a proper party to this proceeding, he not being an "heir" under the meaning of the statute. This issue was not raised at trial and will not be considered on appeal.[13]
Accordingly, both cases will be reversed and remanded for further proceedings and consideration consistent with the pronouncements of this opinion.
Reversed and remanded.
NOTES
[1] W.Va.Code § 18-5-7 reads, in part, as follows:

If at any time the board [of education] shall ascertain that any building or any land no longer shall be needed for school purposes, the board may sell, dismantle, remove or relocate any such buildings and sell the land on which they are located, at public auction, after proper notice, and on such terms as it orders, to the highest responsible bidder. But in rural communities the grantor of the lands, his heirs or assigns, shall have the right to purchase at the sale, the land, exclusive of the buildings thereon, and the mineral rights, at the same price for which it was originally sold . . .. (emphasis added).
[2] Though not presented as an issue in either case, the question of whether any given community is rural would best be left to jury determination. Likewise, the issue of whether a community is truly an independent community, as opposed to a suburb, would best be one for the jury. Complications exist in this area because of the nature of the actions which may be instituted under this statute. This is well illustrated by the difference in the relief sought in the cases presented. In the Stephens case petitioners sought traditionally equitable relief by way of injunction and mandamus. In Akers, petitioners sought declaratory relief. It has been held by the U. S. Supreme Court that declaratory relief is a legal remedy and that in a suit under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, 28 U.S.C.A. §§ 2201, 2202; Fed.Rules Civ.Proc. 57, the parties are entitled to trial by jury as a matter of right. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Therefore, while different procedures and remedies may be invoked for the determination of rights under the repurchase statute, the judicial process should not be manipulated in such a manner as to deny a jury trial on this issue. Application of this statute deals, in part, with community opinion as to the character of a given community. Additionally, the statute will often affect financing of the county education program. In such circumstances as these, determination of the issue is best made by a jury.
[3] It is, of course, fundamental that the party claiming the right will bear the burden of proof, and must establish by a preponderance of the evidence that the property in question is located in a community of predominantly rural character. See, Bluefield Supply Co. v. Frankel's Appliances, Inc., 149 W.Va. 622, 142 S.E.2d 898 (1965); Prettyman v. Hopkins Motor Co., 139 W.Va. 711, 81 S.E.2d 78 (1954); Burk v. Huntington Development & Gas Co., 133 W.Va. 817, 58 S.E.2d 574 (1950).
[4] Judge Lilly's definition seems to have captured the popular flavor of the concept of a "rural" place. In a similar vein, a fairly good definition was given by Dr. Leonard Davis of West Virginia University, when he spoke of his home town of Wildcat, West Virginia. In describing his home town, Dr. Davis referred to it as a "very small place surrounded by miles and miles of virtually nothing but miles and miles." Address by Dr. Davis, Eighteenth Annual W. Va. AFL-CIO Summer School, in Morgantown, W. Va. (June 26, 1979).
[5] In 1933, the Legislature did away with the system of independent school districts, placing each district under the supervision and control of a county board of education. In each case, the county board succeeded the district board and was authorized to hold and dispose of any real estate belonging to its predecessor. As a part of this comprehensive amendment, the term "rural district," used in the previous repurchase provision, was changed to "rural community," the present form. 1933 W.Va. Acts, Ex.Sess., Ch. 8, art. 5, § 7.
[6] 1881 W.Va.Acts, Chapter 15, § 33, provides in part "That the grantor or his heirs, of any school house site shall, if he or they so desire, have the same reconveyed to him or them, without the building thereon, (if any) upon paying to the board of education the amount received by such grantor for such site; or in case no compensation was paid therefor, the same shall be so re-conveyed free of charge. . . . This proviso shall not be construed to apply to any school house lot within any village, town or city."
[7] 39 W.Va. 346 at p. 351, 19 S.E. at p. 381.
[8] W.Va.Code § 8-2-1, relating to the requirements for incorporation of a municipality, provides that "any part of any county or counties. . . urban in character, and containing at least one hundred inhabitants (if such part contains less than one square mile), and an average of not less than five hundred inhabitants per square mile . . . may be incorporated. . . as a city, . . . or as a Class IV town or village . . .."
[9] For a representative treatment, see The Merriam-Webster Dictionary (rev. ed. 1976), which defines the term "rural" in terms of "relating to the country, country people or life or agriculture" or "suggesting open country and farms."
[10] Syl. pt. 3, Shackleford v. Catlett, W.Va., 244 S.E.2d 327 (1978); Cimino v. Board of Education, W.Va., 210 S.E.2d 485 (1974); syl. pt. 5, United Fuel Gas Co. v. Battle, 153 W.Va. 222, 167 S.E.2d 890 (1969); syl. pt. 7, State ex rel. Appalachian Power Co. v. Gainer, 149 W.Va. 740, 143 S.E.2d 351 (1965); syl. pt. 5, State ex rel. Heck's v. Gates, 149 W.Va. 421, 141 S.E.2d 369 (1965); syl. pt. 4, Tweel v. West Virginia Racing Commission, 138 W.Va. 531, 76 S.E.2d 874 (1953), appeal dismissed 346 U.S. 869, 74 S.Ct. 123, 98 L.Ed. 379; McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 (1940); Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir. 1969).
[11] W.Va.Const. art. 12, § 12 specifically provides that the Legislature of the State is to foster agricultural improvement. The Constitution also provides for special treatment of agricultural property in terms of taxation, W.Va.Const. art. 10, § 1, and for creation of the executive office of Commissioner of Agriculture, the only constitutionally-created office devoted to protecting the interests of a specific occupational group, e. g., farmers. W.Va. Const. art. 7, § 1.
[12] We note that the statute, in addition to preserving agricultural resources, accomplishes another equally important objective. By providing a guarantee of this nature to rural grantors, the law facilitates the acquisition of school property on agreeable terms, at a reasonable price, thus benefitting the educational system and the public as a whole.
[13] It is well established that only in the most exceptional circumstances will questions not raised and properly preserved in trial court be noticed on appeal. The rule is of special importance in a case such as this where, had the issue been properly developed, it could possibly have been cleared up at trial. In the absence of evidence and argument, we cannot pass on the issue of whether Donald Akers qualifies as an "heir or assign" for the statute's purposes. See, Shackleford v. Catlett, supra, and cases cited therein. See, also, Hutchinson v. Fidelity Inv. Ass'n, 106 F.2d 431 (4th Cir. 1939) and McKay v. Citizens Rapid Transit Co., 190 Va. 851, 59 S.E.2d 121 (1950).