# CHARLESTON.

## MOORE *v.* HEAT & LIGHT COMPANY.

Submitted September 11, 1908.    Decided April 27, 1909.

1. TORTS—*Actions—Evidence—Weight and Sufficiency.*

   In an action for tort, the plaintiff bearing the burden of proof, a verdict for him cannot be found on evidence which affords mere conjecture that the liability exists, and leaves the minds of jurors in equipoise and reasonable doubt. The evidence must generate an actual rational belief in the existence of the disputed fact. (p. 557.)

2. GAS—*Injuries—Actions—Evidence—Burden of Proof.*

   Where a liability is asserted on the ground of tort, the plaintiff bears the burden of proof of the fact on which the liability rests, and the burden to disprove such fact does not shift to the shoulders of the defendant until plaintiff's evidence shows a state of facts sufficient to establish a rational belief of the existence of such fact. (p. 557.)

Error to Circuit Court, Ritchie County.

Action by T. E. Moore against the West Virginia Heat & Light Company. Judgment for plaintiff, and defendant brings error.

*Reversed.*

Adams & Cooper and J. Newman, for plaintiff in error.

Robinson & Prunty, for defendant in error.

Brannon, Judge:

T. E. Moore's house was destroyed by fire and he sued the West Virginia Heat & Light Company to recover damages for its loss. That company owned a natural gas well 5580 feet from Moore's house, and a pipe conveying its gas ran within 150 yards of Moore's house, and from that pipe a smaller one conveyed gas to Moore's house for his use in it. He used gas in two stoves. The company shut off the gas to connect with a pipe to convey the gas to Cairo, and then without notice turned on the gas again, and, as Moore claims, this caused the fire. Upon the trial the defendant company demurred to the evidence, and upon the demurrer the circuit court of Ritchie county gave judgment for Moore for $950, and the company sued out this writ of error.

The question ruling the case is, Does the evidence sustain the plaintiff's action? The case does not so much involve negligence. The question is, whether the fire originated from the returning gas. Assuming that turning off and turning on again the gas, without notice, is negligence, the problem is, Did the fire come from this cause? It is needless to say that the burden of proof to establish this fact rests on the plaintiff. "A verdict based alone on mere conjecture, without evidence to support it, where the rule as to burden of proof requires some reliable affirmative evidence, should not be permitted to stand." *Robinson* v. *W. Va. & P. R. Co.*, 40 W. Va. 583. "A mere equipoise of evidence is insufficient to satisfy the burden of proof, nor is conjecture or theory or bare possibility of the existence of the ultimate fact to be proved sufficient." 8 Ency. of Ev., 866. "When under the evidence the injuries complained of may have resulted either from defendant's negligence or from some other cause for which he is not responsible, the plaintiff cannot recover, as he has not discharged the burden of proof." 21 Am. & Eng. Ency. L. 516.

The house was a board house of one story and a half.   One
stove was in the kitchen, another in the sitting room.   The
upstairs including part of the house was not used as a room, but
as a place to stow away things.   It was over the sitting room.
The gas was turned off from the well and the fire went out in
the stoves.   Then Mrs. Moore left the house and went to a neigh-
bor's to get him to put up a stove for coal, as she had been told
some time before by an agent of the company that owing to a
sale of the well the gas would be cut off from the house at some
future time, and when cut off it would not be restored to the
house.   Shortly after she left the house was discovered to be on
fire.   There was then no one in the house, and no one saw the
commencement of the fire, or could give any account of its
commencement or how it started.   It was first observed at a
school house in the vicinity by fire issuing from the roof, and
when the teacher and another or others went to the house he
opened the sitting room door, and saw that the fire was in the
garret and was consuming the ceiling over the sitting room.
It is clear that the fire started in the garret; but how no one
knows.   Mrs. Moore had been ironing and had the stove quite
hot.   From the stove in the sitting room ran a pipe to the ceil-
ing, and there connected with a flue of iron running from the
ceiling up through the tin roof, the flue being an iron casing
used in oil wells.   When the teacher and another with him
looked in the sitting room they saw no fire in the stove.   This,
so far, goes to show that the gas had not yet come back.   The
plaintiff's theory is, that the gas passed into the burner in that
stove and went up pipe and flue.   How did it ignite, if so?   His
counsel would say that there was a latent spark in burner or
pipe or flue and when the gas went into them, one or another,
ignition occurred.   The teacher and the witness with him did
not observe it there.   If it went into the stove pipe or flue and
there ignited the flame would have followed the current back
down into the stove, so they could have seen it in the stove, unless
the stream was so strong as to drive it on up, which is a far-
fetched idea, there being no evidence of such a strong volume
of gas.   And how can we say that the volume was any greater
then than it had been all day before the gas was cut off?   The
regulator was the same, the stopcocks the same.   If the gas
filled the room and exploded we could see how the fire occurred,

but there was no explosion. And whence the fire to cause explosion? And the fire started above the room and burned downward. There is nothing to show any stronger current; but what we do know goes against it. Another circumstance proven by the teacher, a witness for the plaintiff, is, that there was a gas jet or flambeau in the yard, and the teacher did not see it burning when on the ground, and thinks it was not. These things go to show that the gas had not yet come back when the fire started. The teacher noticed no gas escaping. The evidence for plaintiff of experienced gas men is, that if the regulators worked well no greater quantity of gas would be admitted when the gas came back than before. We could ourselves assume this, even if not proven. When there is no evidence of greater flow of gas; when the regulators and stopcock were the same as before, how can we say that the trouble came from a larger flow? And why, if no larger, would it set the house on fire when it had not for nine months before? There was no change in fixtures. Evidence of plaintiff clearly proves that if the regulators worked there would be no greater flow of gas than before. Why, if the gas came back and ignited, would it not go up the pipe and flue and out? Why prove so disastrous at this particular time? Why would it not go up the flue? I ask again. If the gas came on before the fire it would either go up the flue, or into the room; but those on the ground scented no gas, and no explosion occurred. The chief reliance of plaintiff to prove that this gas started the fire when it came back is, that a latent spark might have been in the burner in the stove, stove pipe or flue, in soot, and when the gas came it was fanned into a flame, and thus the gas ignited. Unless we adopt this theory (only theory) there is absolutely no ground for the claim that the fire came from returning gas. Such a thing is barely possible, not probable even. The gas was cut off at least a quarter of an hour. A plaintiff's witness, residing close to Moore, and getting gas from the same pipe line, timed it, and says the gas was off one hour. Now would it be likely that latent sparks would lie latent so long? Evidence for plaintiff, giving different opinions as to how long sparks would last, goes to show this not likely. There is not a particle of evidence to prove that sparks or soot were there. It is all surmise. We are asked to build up this theory for charge on mere surmise, mere possibility; but the

party alleging negligence must "establish it by proof sufficient to satisfy reasonable and well-balanced minds. The evidence must show more than a probability of a negligent act. The facts from which the jury can determine whether or not there was negligence must be shown by competent evidence, and the jury should not be left to mere conjecture or random judgment." *N. & W. R. Co.* v. *Briggs,* 103 Va. 105. So, on the same principle, possibility that this spark theory may be true will not do; even mere probability will not. No man can say with any confidence that it is true. It is important in this connection to add that the chief witness offered as an expert to support this theory, Huldeman, says that such might have been the origin of the fire, yet distinctly says that this is a mere conjecture; that the origin of the fire is conjecture. He says he had known several fires to occur by leaking gas and igniting of gas "or something of the kind they did not discover," and further said he had heard of several fires similar to Moore's "the cause for which could not be explained." He was asked if he knew of a house burned in that way, and answered, "Not just exactly that way. I don't know exactly that it was soot forming that caused it, but I have known houses to burn by leaking valves, or the igniting of gas that accumulated and that no one knowed anything of in the building." Then came the question "I mean to ignite from latent flames?" Answer, "I don't know as to that." Question, "You don't know that Mr. Moore's house caught from a latent fiame?" Answer, "I don't know." Question, "You don't know how it caught do you?" Answer, "I don't know how it burned. I know that the house was burned; that is all I know about it." I have detailed this much of this witness' evidence, so much relied on, to show how frail the foundation. Such the case of the evidence. I am, have been above, speaking of the evidence for the plaintiff. This witness says there would have to be a blaze for ignition. Not likely there was any lingering blaze in a light burner and pipe so long after gas was off. Not likely a spark would become a blaze. If there was a blaze, it could not have been in the burner in the stove. How could it be away up in the pipe or flue? An experienced witness for plaintiff stated that he would think that metal of the thickness of such a gas burner as Moore's would not get hot enough to ignite "to turn off and right on again;" that the burner would not usually

get hot unless soot filled it up. There was no evidence of this. Surely the burner would cool in fifteen minutes or more, taking the shortest time the gas was off under the varying evidence. It is suggested, but not much pressed, that the returning gas may have ignited from a red hot burner or stove. But Mrs. Moore, the only person in the house, and she using the stove, says the burner in the sitting room, which was under the garret where the fire started, was not red hot. She did not notice that the one in the kitchen was. The fire did not start over the kitchen.

Plaintiff, seeing how frail this foundation, appeals to the evidence of a witness who saw gas burning in the pipes, seeking to show the actual presence of gas. But that was three o'clock, long after the fire began, after the house had been consumed. Of course, if the gas came during or before the total extinction of the fire, it would ignite from the burning house. Just here I remark there is another feature casting obscurity. It is not certain that the gas had come back to the house when the fire started. There is variance among witnesses as to the length of time the gas was off. The evidence of those at the well is that the gas was turned off at half past twelve o'clock. A witness of plaintiff, Cokely, living near Moore, and getting gas for his home from same pipe line, the most accurate witness because he carefully noted the time by the clock and examined his regulator, and seems to be careful in observation, says the gas went off at one o'clock and came back at two by the clock. If this be correct it is quite probable that the fire started before the gas came on; for Mrs. Moore says it started a little after one o'clock, and the teacher says he first noticed fire about two; but it then had a good start, was coming out the roof and destroying the ceiling. It was then large enough to be observed at the school several hundred yards off. It was burning downward, and would thus take longer time to gather volume. And the roof was tin, not shingles. The fire probably started a good while before discovered. And it goes to show that the gas came on after the fire began that the teacher and those with him did not see or hear the jet or flambeau of gas in the yard. If flaming and roaring it is likely they would have seen and heard it.

Counsel say that the evidence establishes a *prima facie* case, and the burden falls on the defendant to prove that the fire did not come from the cause alleged by the plaintiff. But a

case to call for judgment has not been proven. The evidence does not do so. Where a railroad company was sued for causing a fire, in order to raise the presumption of negligence, so as to cast on defendant the burden that its locomotive had suitable fixtures to arrest sparks, the jury must be reasonably satisfied that sparks emitted in dangerous quantity caused the fire, "and evidence merely 'tending' to prove it is not, as a matter of law, sufficient." *L. & N. R. Co.* v. *Malone*, 20 So. 33. Mere *tendency* to prove will not shift the burden. If the evidence "in reference to a fact is equally balanced, or it does not generate a rational belief of the existence of the fact, leaving the mind in a state of doubt and uncertainty, the party affirming its existence must fail for want of proof." 2 Ency. of Ev. 785. "Where the testimony upon the issue leaves it doubtful whether the affirmative of that issue is sustained, it is a safe and proper course for the jury to find against the party holding the affirmative." *Lexington Co.* v. *Paver*, 16 Ohio 324. The Court said in *Sim* v. *Bank*, 8 W. Va. 274, that "evidence to establish a debt should do more than produce a suspicion—it should be sufficiently clear and definite in its character to satisfy the mind of the court of the fact, to a reasonable certainty." The evidence should generate a rational belief of the fact creating liability in cases of tort.

We reverse the judgment, set aside the verdict, and render judgment for the defendant upon the demurrer to evidence.

*Reversed.*