# CHARLESTON.

FLORENCE HELM *et al.,* v. MANUFACTURERS LIGHT & HEAT CO.

Submitted September 7, 1920.    Decided September 14, 1920.

1. NEGLIGENCE—*Degree of Proof Required.*

   Though equality of probability of actionable negligence on the part of both plaintiff and defendant, disclosed by the evidence in an action for a personal injury, bars right of recovery, the jury may properly give force and effect to facts and circumstances tending to emphasize and sustain the theory of the plaintiff and impair and weaken that of the defendant, and so conclude that there is a preponderance of evidence in favor of the former. Mere probability that the injury was caused by plaintiff's negligence does not preclude right of recovery, if there is a stronger probability of actionable negligence on the part of the defendant. (p. 631).

2. TRIAL—*Jury May Find that Gas Passed Through Crevices of Wall to Cellar and Exploded.*

   Upon their common knowledge of the nature and tendencies of natural gas and air, a jury may properly find that gas

escaping from a .pipe situated a few. inches from a wall in which there are crevices and apertures, and in the open air, found its way through the crevices into a cellar back of the wall, and,. accumulating there, occasioned an 'explosion on the striking of a match at an inside cellar door. (p. 631).

3. GAS—*Gas ·Company Liable for Improper Installations and Fittings.*

The duty of proper installation, maintenance and inspection of a meter furnished, owned and exclusively controlled by a public service corporation engaged in supplying natural gas, and also of the fittings by which it is attached to the 'service pipe, rests upon the corporation, and negligence consisting of omission of such duty and causing injury imposes liability upon it. (p. 634).

4. SAME—*If Service Pipe Installed by Consumer is Dislocated, He Cannot Recover.*

But the duty of maintenance, inspection and repair of the service pipe installed by the consumer rests upon him, and, if he permits it to become so dislocated, after attachment of the meter, as to cause a fracture of a meter fitting, resulting in an escape of gas, unknown to the corporation and causing injury to the consumer, the latter cannot recover, even though the corporation had knowledge of the injurious tendency of the dislocation of the service pipe. (p. 634).

5. SAME—*Instructions Must be Based on Evidence.*

An instruction given in general terms should not be broad enough literally to include subjects or objects other than the one in respect of which there· is evidence tending to prove a cause of action. If in an action of the kind here indicated, the evidence of negligence pertains only to the meter and its fittings, an instruction for the plaintiff should not extend to nor include the defendant's pipe lines. (p. 634).

(WILLIAMS, PRESIDENT, absent.)

(LYNCH, JUDGE, dissents to point 2 of syllabus.)

Error to Circuit Court, Brooke County.

Action by Florence Helm and others against the Manufacturers Light & Heat Company. Judgment for plaintiffs, and defendant brings error.

*Reversed and remanded.*

86 W. Va.

*Erskine, Palmer & Curl,* for plaintiff in error.

*Ramsay & Wilkin* and *W. M. Werkman,* for defendants in error.

POFFENBARGER, JUDGE:

The judgment for $3,500.00 under review on this writ of error was recovered in an action for damages for a personal injury, alleged to have been caused by the negligence of the defendant, a corporation supplying natural gas for light and fuel, in respect of its gas mains, pipes and meter. A wife sues for the injury, her husband joining her in the action. The specific assignments of error challenge the sufficiency of the evidence to sustain the verdict and the correctness of a certain instruction given at the instance of the plaintiffs.

In the second count of the declaration and the evidence, the charge of negligence is limited to alleged defectiveness of the meter connections and conduct of the defendant respecting the same. The theory of the plaintiffs is that, by reason of the sliding of the ground over which the meter stood and an accumulation of ice on the meter, a connection between it and the service pipe, called in some places a union and in others a brass or bronze nipple, broke and permitted an escape of gas which found its way into the building in which the plantiffs resided, and, being accidentally ignited by a match struck by the female plaintiff, caused an explosion in which she was knocked down and severely burned, notably about the head, arms and chest. The house, a one-story, three-room, frame structure, had a kitchen and cellar under a portion of it, made by an excavation in a hillside and enclosed by a hollow tile wall which, conforming to the horizontal dimensions of the house, constituted its foundation. The explosion occurred in the cellar and kitchen and the gas or other explosive substance seems to have been in the former. At about 5:30 A. M. February 9, 1918, something like a half an hour after the husband had come down into the kitchen and refreshed the coal fire with a bucket of coal procured from the cellar and lit a lamp, and almost immediately after the wife came down, the latter opened the cellar door and struck a match on or about it, intending to enter the cellar for some meat, and the explosion occurred. She was rendered unconscious, her clothing set on fire

and gas pipes broken inside of the building from which gas escaped and was ignited by her burning clothing. For some reason there were two explosions in close succession. As soon as possible, the huband went to the meter and shut off the gas. The flames were extinguished and the gas pipe connections restored by neighbors.

In this work of restoration, evidence of the cause of the explosion, relied upon by both plaintiffs and defendant, was discovered; a broken connection in the cellar made one of the principal grounds of the defense and a broken connection at the meter, relied upon by the plaintiffs, in connection with other facts, as proof of negligence on the part of the defendant. If the break in the cellar occurred before the explosion, the gas causing the injury no doubt accumulated there in consequence, and, as the defendant was not responsible for the safety or maintenance of that pipe, it admittedly would not be liable under the circumstances. On the other hand, as it owned, controlled and had placed the meter, there may be liability if the accumulated gas came from the break found in the meter connection. The meter was disturbed by the explosion and it is insisted that the break in that connection was a result, not a cause, of the accident.

Claiming that, if either break antedated and caused it, the probabilities as to which of them did so are equal, the defendant invokes the well settled legal proposition that, in such a case, a verdict against the defendant cannot be permitted to stand, because the plaintiff, carrying the burden of proof and being bound to make out a case of negligence affirmatively, has not succeeded in doing so. *Moore* v. *Heat & Light Co.*, 65 W. Va. 552; *Jacobs* v. *Baltimore & Ohio R. Co.*, 68 W. Va. 618.

There is evidence in the case, however, giving the theory of the plaintiffs an emphasis not possessed by that of the defendant and tending to disprove the latter. The connection in the cellar had efficiently and safely performed its function for more than two years and there is no evidence tending to prove disturbance of it at anytime prior to the explosion. It was a bushing used near the cellar door in reducing the inch pipe which entered the cellar from the meter, passing through the weatherboarding over the hollow tile wall and going up the wall inside and then along the

joists or rafters, to a quarter or three eighths of an inch, before
it passed into the kitchen through the south facing of the door in
the partition. Some of the expert witnesses disapprove its use,
but others commend it. After the explosion, the pipe in which
it was, or of which it formed a part, was found to have been bent,
as a result of a six inch outward dislocation, by the explosion, of
the wall from which the inch pipe came and to which it was at-
tached. This circumstance tends to prove that the bushing was
unbroken before the explosion and that, at that instant, it was
strong enough to hold until the pipe had bent under the strain
put upon it by the dislocation of the wall, resulting from the
explosion. If there had been a previous disconnection by reason
of the break, the pipe being loose at that point, likely would not
have bent there. It is highly probable that the bushing was intact
and held until the bulging or careening wall, pulling the pipe
with it, bent it near the location of the bushing, before the latter
gave way. There is evidence tending to prove, in favor of the
theory of the plaintiffs, that the meter had never been properly
nor, perhaps, safely installed, and also that it had been disturbed
in such manner as may have caused the admitted break in the
nipple or union, which was discovered after the inside plumbing
had been restored. The meter was supported by an upright pipe
coming from the ground and the pipe passing over the wall, but
it was suspended by these pipes and the connections at a height
of about 18 inches from the ground and was otherwise unsup-
ported. In the pipes, there were swinging joints which permitted
the meter to be moved in certain directions, without infliction of
any strain on the pipes or connections, but not in others. The
husband testified very positively that a sliding of the ground at
the location of the service pipe and meter had very perceptibly
disturbed and dislocated the meter and the upright pipe to which
it was attached. In this he is corroborated by a neighbor, Mc-
Laughlin, who says the meter "set straight up," when first put
in, but afterwards leaned towards his house and in such manner
as to impose a strain on the pipes or connections. Although the
explosion thrust the wall out against the meter and disturbed it
and may have caused the fracture of the fitting, there was a leak
somewhere before the explosion and the jury could find it was

not inside but outside and, therefore, that the outside fracture antedated the explosion and emitted the gas. The escaping gas almost certainly came from one of the two admitted fractures. It would subserve no good purpose to set forth in detail all of the evidence here referred to. It is substantial and its tendencies clear and strong. There is a clear prepondeance of evidence in favor of the contention of the plaintiffs.

If, however, the broken connection at the meter, permitting escape of about 50 cubic feet of gas per hour, antedated the explosion, liability is denied on the ground of lack of proof that the escaping gas entered the cellar, and the tendency of expert testimony adduced, to prove that it did not. The meter stood but a few inches from the tile wall and not far below the top thereof and the bottom of the frame structure. In the tile wall there was a small window and there is evidence tending to prove openings around the window and also a crack or open space between the weatherboarding and the top of the wall, all of sufficient size to admit considerable air and gas, if the latter was escaping and for any reason seeking entrance. In our opinion, it is immaterial whether the night was windy or whether the wind, if any, blew toward or from the northeast. Cold and dense air seeks warm and rarified areas, and readily finds its way through small apertures. The air in the cellar was no doubt warmer than that outside. At any rate, there was a coal fire in the kitchen warming the air in that room, to which air could drift from the cellar through spaces around the door and thus tend to the creation of currents from the outside into the cellar. The entrance of only a small quantity of gas into the cellar was sufficient to cause the explosion. Less than 100 cubic feet of gas combined with all the air in the cellar would have rendered it explosive. But there need not have been so large a quantity as that, for such as entered naturally went to the top and may have formed a small explosive pocket there. The expert testimony denies that the wind blew it in, but it may have drifted in without the aid of the wind and in spite of its disturbing tendency. Upon their common knowledge of the natural laws and tendencies of gas and air, the jury were warranted in finding that escaping gas could have entered the cellar from the broken outside fixture.

In view of this conclusion, it is hardly necessary to say the explosion cannot be attributed to some unknown cause, such as the possibility of dynamite or powder in the cellar. There is absolutely no evidence of the presence of anything of that kind.

As the meter and its connections were furnished, installed and maintained by the defendant, and the plaintiffs had no right to molest or interfere with it, we are of the opinion that the duties of proper installation, maintenance and inspection of it and the selection of safe and suitable fittings for connection thereof with the service pipes rested upon the defendant. Under the contract, it was the property of the defendant and molestation thereof by the consumer was forbidden.

But an insuperable obstacle to recovery, upon the evidence adduced, is found in the fact that the alleged cause of the fracture of the fitting was the dislocation of the service pipe which the plaintiffs were bound to maintain. No duty of maintenance thereof rested upon the defendant. This is impliedly, if not expressly, held in *Canfield* v. *W. Va. Central Gas Co.*, 80 W. Va. 731, and specifically held in *Smith* v. *Pawtucket Gas Co.*, 24 R. I. 292; and *King* v. *Consolidated Gas Co.*, 90 App. Div. N. Y. 166. Upon principles declared in the cases just cited and others referred to in the note to *Consolidated Gas Co.* v. *Connor*, 32 L. R. A. (N. S.) 809, there might be liability upon the defendant, if a leak had been discovered and brought to its attention, upon the theory of duty either to make the pipe or fixture safe or cut off the gas; but, in this case, no leak had been discovered. There was only a displacement or disturbance of the service pipe, known to the plaintiffs and not caused by any act or omission of the defendant. That dislocation caused by the slipping ground on the premises of the plaintiffs disturbed the meter and finally broke the fitting. There is no evidence that the fitting was unsuitable or inappropriate or that the mere weight of the meter broke it. Some witnesses say it was less dependable than similar fittings made of other materials, but it was a standard fitting commonly used. Of course there was no duty resting upon the plaintiffs to prevent the sliding of the land, but they were under duty to keep their own service pipe in place and to prevent it from breaking the defendant's fitting by its dislocation.

There is evidence of notice to the defendant's agents of the abnormal condition of the meter and of a promise to remedy it, but it necessarily included notice of the failure of duty on the part of the plaintiffs, if it was full and complete; and, as has been observed, the defendant was under no duty to restore the service pipe to its proper position, in order to prevent possible injury to its meter and the fittings. At that time, the fitting was presumptively unbroken and the situation not immediately dangerous.

It is argued that the plaintiffs are barred from recovery by reason of an accumulation of ice on the meter, which, they claim, may have caused the fracture, because it too was preventable. The jury could have found, however, that, as the large icicle rested on the ground and enveloped the meter, it practically supported its own weight and, therefore, did not cause the fracture.

Instruction No. 1, given at the instance of the plaintiff is not aptly drawn. In general terms it placed upon the defendant duty to maintain its pipe lines and prevent injurious escape of gas, and advised the jury that, if they should believe a quantity of gas escaped from the pipe lines used by the defendant in transporting and supplying gas, because of its negligence, and injured the plaintiffs, there was liability, unless it should be further found that the plaintiffs had been guilty of contributory negligence in the premises. It should have limited the duty of the defendant to the meter and its fittings. The defect might not be cause for reversal, but it should be remedied for the purposes of the new trial, if one should occur.

The judgment complained of will be reversed, the verdict set aside, as being contrary to the law and the evidence, and the case remanded for a new trial.

*Reversed and remanded.*