FRANK BURK, ADM'R., *etc.*

*v.*

HUNTINGTON DEVELOPMENT & GAS Co., *et al.*

(No. 10174)

Submitted February 7, 1950. Decided March 21, 1950.

*Bernard J. Pettigrew, C. E. Goodwin, H. L. Ducker,* for plaintiff in error.

No appearance for defendant in error.

Fox, Judge:

This is an action for wrongful death, instituted in the Circuit Court of Cabell County, in which Frank Burk, administrator of the personal estate of Alexander Burk, deceased, is plaintiff, and the Huntington Development & Gas Company, a corporation, Charles H. Hagan, doing business as Charles H. Hagan & Company, City of Huntington, a municipal corporation, United Fuel Gas Com-

pany, a corporation, hereinafter referred to as the Gas Company, and Jacob H. Brown are defendants. The case grows out of an explosion in a building located on an alley between 9th and 10th Avenues, and leading from 7th to 8th Streets, in the City of Huntington which occurred about 9 o'clock A. M. on August 23, 1946, which resulted in the death of Alexander Burk, plaintiff's decedent, a child about one year of age. The declaration filed in the case contains allegations tending to connect all of the defendants with being responsible, in whole or in part, for said explosion, as will hereafter be developed. A demurrer to plaintiff's declaration interposed by the City of Huntington was overruled.

The case was tried before a jury on plea of the general issue, and at the end of plaintiff's evidence motions to direct a verdict in favor of the City of Huntington, a municipal corporation, and Jacob H. Brown, were sustained. During the trial, it was stipulated that the Huntington Development & Gas Company, a corporation, had been purchased or absorbed by the United Fuel Gas Company, which latter company had assumed the obligations of the Huntington Development & Gas Company, which latter company was no longer in existence, and for that reason it was dismissed from the case, and that the case alleged against it was to be prosecuted against the United Fuel Gas Company. Motions made for directed verdicts in favor of the remaining defendants, Charles H. Hagan & Company and the United Fuel Gas Company, were overruled, and the case was submitted to the jury on the issues arising between the plaintiff on the one part, and Charles H. Hagan & Company and the United Fuel Gas Company on the other. The jury returned a verdict for the defendant, Charles H. Hagan, doing business as Charles H. Hagan & Company, and a verdict for the plaintiff and against the United Fuel Gas Company in the sum of $10,000.00. A motion was made to set aside the verdict against the Gas Company, which motion was overruled, and judgment entered on said verdict on April 2, 1949, to which it excepted at the time. On June 6, 1949, on

motion of the Gas Company, we awarded this writ of error.

The complicated nature of this case in respect to the number of defendants involved, and their connection with the explosion from which plaintiff's decedent met his death, requires a somewhat extended statement of the facts involved, as they are alleged in the declaration, and as they appear from the testimony introduced on the trial of the case.

The dwelling in which plaintiff's decedent lived at the time of his death was located on an alley about twenty feet in width, running from 7th to 8th Streets, and between 9th and 10th Avenues, in the City of Huntington. The first story of said dwelling was of brick construction, the walls of which extended down into the ground on both sides and ends. At the rear of the building was a small porch which had been enclosed and converted into a bathroom. At the time of the explosion, the Huntington Development & Gas Company supplied the premises with natural gas. This gas was furnished from a gas main line located on the north side of the alley on which the said dwelling faced, so that it was necessary for the Gas Company to maintain a gas line from its main line to the property line on which the dwelling was located. This line was laid underneath a brick paved alley, twenty feet in width, to the south side of said alley at a curb box adjacent to the property on which the dwelling was located. At this point, the customers line connected with said curb box and extended along an automobile driveway between the dwelling in which the explosion occurred and a frame dwelling to the east owned by Jacob H. Brown. This driveway connected with a double garage back of the two dwellings and was made up of two strips of concrete to accommodate the tread of automobile tires. In this driveway was located the gas service line extending from the curb box aforesaid to a meter located near the enclosed porch on the rear of the dwelling in which the explosion occurred. The driveway also accommodated a sewer line installed for the use of the dwelling in which

the explosion occurred, and the Brown dwelling to the east. The gas service line which accommodated plaintiff's decedent was laid between the west strip of concrete in the driveway and the dwelling in which the explosion occurred.

The sewer line in the driveway between the Brown house and the dwelling in which the explosion occurred had broken down some months before the explosion, and the owners of the premises served by such sewer, one of whom was Jacob H. Brown, being required by the city to repair the same, employed the defendant Charles H. Hagan & Company to perform that work. In connection with this work, excavations were made in the driveway, and it was also necessary to remove some of the brick pavement in the alley, and to excavate the ground over the sewer thereunder. It appears that before this work was undertaken, and thereafter, the brick pavement over the sewer settled more than once, and the City of Huntington undertook to correct the situation by dumping loads of dirt into the hole and replacing the brick. It appears that the last work performed in connection with this effort was a few days prior to the explosion. The gas line of the Huntington Development & Gas Company which lay under the brick pavement of the alley was a short distance from the excavation or the depression in the brick pavement aforesaid. It is in evidence that the presence of sewer gas was noticeable around the dwelling in which the explosion occurred.

This being the factual situation, the declaration alleged liability against all of the defendants for the death of plaintiff's decedent on various grounds. As to the City of Huntington, it alleged, in effect, that it wrongfully permitted said public alley to become and remain in bad order and out of repair, in that it permitted a large and deep excavation to be made near the center of said alley, and that there was a pipe line carrying natural gas from a main running along the northerly part of said alley to the plaintiff's decedent's place of residence, and that the

same allowed a deep hole to develop on the surface of said alley, causing the wheels of trucks and vehicles to jar the surface when they struck said hole, and thereby caused the natural gas pipe extended across said alley to break at some point beneath the surface of the alley, thereby permitting natural gas to escape and travel through the ground and along the outside of said pipe in a southerly direction to the residence of plaintiff's decedent, and through and into the same, and to accumulate there in such quantities that said gas did, on August 23, 1946, come in contact with a lighted fire therein, without fault on the part of plaintiff's decedent, and explode with great violence, which explosion and ensuing fire greatly injured and caused the death of plaintiff's decedent. As to the Huntington Development & Gas Company, and the United Fuel Gas Company, the allegation is that they, or the one directly in charge, permitted said gas line across said paved alley to become broken and out of repair, and so close to the surface of said alley so that the same became broken and loose from the weight and jar of vehicles passing along and over said alley "which said break in the pipe line permitted the natural gas therein to escape for a long time prior to the 23rd day of August, 1946, and to travel through the ground and along the outside of said pipe in a southerly direction to the residence of plaintiff's decedent and through and into the same and to accumulate there in such quantities that said gas did, on the 23rd day of August, 1946, come in contact with a lighted fire in said residence, without any fault on the part of plaintiff's decedent, and exploded with great violence, which explosion and ensuing fire greatly injured and as a direct result thereof, caused the death of plaintiff's decedent. * * *" The allegations as to Jacob H. Brown and Charles H. Hagan & Company relate to alleged acts of negligence in connection with the repair of the sewer, situated under the driveway between the residence of Brown and the dwelling in which said explosion occurred.

Inasmuch as the United Fuel Gas Company is the only

remaining defendant, all other defendants having been eliminated from the case, either by jury verdict, or by direction of the court, it is only necessary to consider the testimony offered at the trial, so far as the same affects the alleged liability against the Gas Company. The only evidence indicating the presence of gas in the paved portion of the alley, which is that part of the gas line under control of the Gas Company, is the testimony of witness A. C. Johnson to the effect that in the evening after the explosion and on the following two or three days some person, with what is called an inspection gauge, made an examination of the premises around the destroyed dwelling in an effort to detect whether there was any natural gas under the surface of the said premises and the paved alley. This testimony indicates that the gauge showed that gas existed in the ground at the alley where the service pipe was located, and that there was gas in the ground in the area in which the explosion occurred. According to this witness gas was located in the ground along the driveway in the alley between the house that blew-up and the frame house east of it. The witness stated that the man who made these tests said he was employed by the Gas Company. He also testified that several tests were made at the edge of the alley, and that they would pull up a brick and make a test, and then did the same further over into the yard of the house on the north side of the alley. Other than these statements, there is no evidence as to what, if any, tests were made, and the man who made the tests did not testify in the case. The testimony is that the service line across the paved portion of the alley, together with the curb box at the south edge of the alley, was removed by the then operating Gas Company. The service line extending from the curb box to the meter at the end of the destroyed building was left in the ground until about February, 1947, when it was removed. A party who assisted in its removal, testified that this line was in good condition, but no tests were made to determine whether it was in such condition as to permit gas to escape therefrom. A meter reading covering a period of about two days immediately

before the explosion showed that one thousand cubic feet of gas passed through the line which would indicate that at some point gas was escaping in large quantities, and further indicating that it was so escaping at some point beyond the meter outlet. There is no evidence of any inspection of the appliances within the dwelling where the explosion occurred. There is testimony that the presence of odors from the sewer around the explosion premises was very marked, which may or may not indicate the presence of sewer gas. The Gas Company did not introduce any evidence in the case, and the plaintiff did not introduce any testimony bearing upon the actual presence of gas in the service lines under the control of the Gas Company, other than the testimony mentioned above regarding tests supposed to have been made by one of its employees.

When the plaintiff closed his case, counsel for the Gas Company announced that it would offer no evidence, and stand on the record as then made, reserving the right to change his mind, which he did not do, and no testimony was offered on the part of the Gas Company. At this point, the trial of the case was recessed until the day following, when testimony was offered on behalf of Charles H. Hagan & Company, who was represented by counsel different from counsel representing the Gas Company. One of the witnesses so introduced was Fred M. Ferguson, who had been engaged in the plumbing and heating business in Huntington for some forty-seven years. He testified that he was employed by the then operating Gas Company to make an examination of conditions around the premises where the explosion occurred, and that he made such an examination. He was asked to describe the condition of the service line, presumably the service line under the paved alley, and stated that he found nothing wrong with such line. He testified as to what he called the "stopcock" located on the property line near the south curb of the alley, and that the alley was twenty feet wide, paved for eighteen feet, leaving twelve inches for utilities. Following this testimony, the following examination of the witness was made:

"Q. If there was any gas leaking there at the stopcock where would it have gone?

"Mr. Strickling: We object to that, your honor.

"The Court: I will sustain the objection. Don't answer.

"Mr. Gibson: We wish to make an avowal. (Exception)

## AVOWAL

"A. It would come up through the stop box.

"Q. In other words, it would have gone out of the holes in the top?

"A. That's right.

"The trial was then resumed in the hearing of the jury, as follows:

"Q. How close was the stopcock to the concrete curb, if you know?

"A. Well, I would—pretty near on the edge of it. I would say just off of the curb. Just off of the curb, yes.

"Q. From your examination of the ground after the ditch was dug, if there had been any escaping gas there, could it have gone through the ground and traveled along the service line?

"Mr. Strickling: Objection.

"The Court: Sustained.

" (Exception).

## AVOWAL

" (Whereupon the question was read.)

"A. In my experience it could not."

As indicated above, an exception was taken at the time to the court's refusal to permit the testimony, covered by the avowals, to be admitted as evidence in the case. This exception was made by counsel for Charles H. Hagan & Company. There was no exception thereto by the Gas Company. The refusal to permit the avowed matter to

go to the jury was assigned as a ground of error by the Gas Company when it made its motion to set aside the verdict returned by the jury. The question arises whether the exception saved by counsel for Charles H. Hagan & Co. enured to the benefit of the Gas Company; and the further question of whether, in any event, the assignment as error of the refusal to permit such testimony to go to the jury in motion to set aside the verdict came too late to be of any benefit to the Gas Company.

The principle error assigned by the Gas Company is the refusal of the court to give to the jury its Instruction No. 1, which would have directed the jury to find a verdict in its favor. Other assignments of error cover the alleged errors of the trial court in relation to the admission of certain evidence, or the refusal to permit evidence to go to the jury. We have examined the record with respect to the admission of, or refusal to admit, certain testimony as evidence, and are of the opinion that in only one instance was error, prejudicial to the Gas Company, committed by the trial court. That instance was the refusal of the court to permit to go to the jury the testimony of the witness Ferguson, as to the character and condition of the stopcock referred to by him in his testimony, and his opinion on the question of whether any natural gas which might escape from the pipe lines under control of the defendant Gas Company, could pass outside and along the pipe line through the ground and into the residence where the explosion occurred. We think this testimony, avowed in the record, should have been permitted to go to the jury. The plaintiff's declaration attempted to connect the Gas Company with the accident by charging negligence on its part in maintaining the service line across the paved alley, to the point at the curb where the service line leading into the dwelling connected with the Gas Company's connection at the curb. The testimony of Ferguson was to the effect that if there had been any defect in the stopcock, the gas would have escaped from the top thereof; and in any event, according to his experience, any escaping gas would not follow the pipe line

through the ground and into the dwelling. This testimony was important to the defense of the defendant offering the same and to the defense of the Gas Company.

While we consider the refusal to admit the testimony mentioned above as error, we do not think it was error of which the Gas Company may take advantage in this Court. While we have been unable to find any authority exactly covering such a situation, we are of the opinion that if the Gas Company desired to avail itself of this supposed error on the part of the court, it was its duty to associate itself in some way with the examination of this witness, or at least to enter an exception to the action of the court, because, obviously, that evidence was of as much or even greater value to the Gas Company than it was to Hagan & Co. The asserted liability against Hagan & Co. grew out of its alleged inefficient work in repairing the sewer in the driveway and paved alley above mentioned, and it was under no direct duty to keep the gas lines involved in repair, although it was under the duty to avoid damaging said gas lines while repairing said sewer. The charge of negligence against the Gas Company was its alleged failure to keep the gas lines over which it had control in such a state of repair as to prevent the escape of gas. As to both defendants, the allegation was that the gas escaped and followed the service line from the stopcock at the curb, into the dwelling where the explosion occurred. There was no direct connection or joint effort as to the defense offered by the Gas Company and that offered by Hagan & Co. Each was represented by its own counsel and made separate and distinct defenses. We do not believe the exception taken by counsel for Hagan & Co. can be taken advantage of in this Court by the United Fuel Gas Company.

After the verdict was returned against the Gas Company, it made a motion to set aside the verdict and among the errors assigned was the refusal of the court to permit to go to the jury as evidence the testimony of the witness Ferguson, an avowal of which was made on the record

and is quoted above. Perhaps if the Gas Company had, before the case was submitted to the jury, asked to have such testimony admitted, and upon refusal entered its exceptions thereto at that time, the error, if any, could have been taken advantage of in this Court. We think, however, that the motion made for a new trial on that ground, after the jury verdict was returned, came too late.

This question has received the attention of the courts of Virginia and this State, and there does not seem to be any conflict in the authorities thereon. In the case of *Perry's Adm'r.* v. *Perry*, 26 Gratt. (Va.) 320, it was held:

"Though a plaintiff moves the court, before the jury retires to consider of their verdict, to exclude certain evidence which had been given on the trial, which the court refuses to do, if notice of a purpose to except to the ruling of the court is not given until the jury come into the court with their verdict, the exception is too late."

In *Wickes et al.* v. *B. & O. R. R. Co.*, 14 W. Va. 157, this Court held:

"It must appear from the record, that a point decided by the court during the trial before the jury has been saved before the jury retires; though the bill of exceptions may be prepared, and may be signed by the judge, either during the trial or after it is ended during or before the close of the term at which final judgment was rendered. * * *"

In *Core* v. *Marple*, 24 W. Va. 354, we held:

"When an instruction is given to the jury without objection at the time, and no exception or notice of exception is taken or given before the verdict is returned by the jury, the giving of the instruction cannot be a ground for setting aside the verdict and granting a new trial of the case."

The opinion in this case was prepared by Judge Snyder, and in the body of the opinion he gives the reason for the rule announced, which we think applies to the admission of testimony to the same extent as it applies to instructions. The opinion on this point reads:

"The principal reason for this rule seems to be that an objection made or exception taken after the verdict has been rendered might affect very injurously the rights of the opposing party; for if notice had been promptly given of the exception he might have had it in his power at the time or during the trial to obviate or counteract it, and it would, therefore, be unjust to permit his adversary to insist on the exception and have the benefit of it after he has made it impossible to meet or obviate it by his own negligence or it may be by his contrivance. Very often evidence is offered or instructions asked which may not be regarded entirely free from objection by the party offering the same and without any serious desire to have the same go to the jury, but which, not being objected to, does go to the jury. In such case if objection had been made at the time, such evidence or instruction would probably have been withdrawn by the party or rejected by the court. It would in such case be unjust to the opposite party and unfair to the court as well as a premium to negligence and sharp practice to allow the party to have the verdict set aside. For these and other obvious reasons a party cannot be permitted to take his chances with the jury and at the same time hold in reserve some inadvertence or avoidable mistake to destroy and set aside the verdict if it happens to be against him."

The decision in *Core* v. *Marple, supra,* was approved in *Danks* v. *Rodeheaver, et al.,* 26 W. Va. 274. In that case, Judge Green said in the body of the opinion:

"* * * *if errors or supposed errors of any sort are committed by a court in its rulings during the trial of a case by a jury, the appellate court cannot review these rulings, unless first they were objected to when made, and the point then saved, and a bill of exceptions taken showing these rulings during the term of court * * *.*"

See also the criminal case of *State* v. *Files,* 125 W. Va. 243, 24 S. E. (2d) 233. This principle has been uniformly applied in other criminal cases. *State* v. *Baker,* 84 W. Va. 151, 99 S. E. 252; *State* v. *Driver,* 88 W. Va. 479, 107 S. E.

189; *State* v. *Friend*, 100 W. Va. 180, 130 S. E. 102; *State* v. *Bailey*, 103 W. Va. 605, 138 S. E. 202; and *State* v. *Bragg*, 105 W. Va. 36, 141 S. E. 400. The Gas Company did make a motion for a new trial, and upon refusal of the court to grant the same saved its exception to the action of the court as required under the decisions of this Court. *State* v. *Rollins*, 31 W. Va. 363, 6 S. E. 923; *Payne* v. *Riggs*, 80 W. Va. 57, 92 S. E. 133; and *Kent* v. *Lauthers*, 95 W. Va. 245, 120 S. E. 598. We think the authorities cited and discussed above require us to hold that the above mentioned assignment of error made on the motion of the Gas Company to set aside the verdict of the jury cannot be considered by this Court.

This brings us to the question of whether or not Instruction No. 1, a peremptory instruction to find for the defendant, offered by the Gas Company, should have been given, and, of course, this involves the question of whether the evidence introduced in the case was of such character as to sustain the verdict of the jury returned in favor of the plaintiff. The court having declined to give this instruction, and the jury having returned a verdict in favor of the plaintiff, the question now before us is whether or not the same should be set aside on the ground of the insufficiency of the evidence introduced in the case to sustain same.

It is elementary law that when a plaintiff comes into court in a civil action he must, to justify a verdict in his favor, establish his case by a preponderance of the evidence. The burden of proof, meaning the duty to establish the truth of the claim by a preponderance of the evidence, rests upon him from the beginning, and does not shift, as does the duty of presenting all the evidence bearing on the issue as the case progresses. The question of whether he has sustained this burden is usually a question for jury determination; but the jury's action is subject to the control of the trial court, and of this Court. The cases are numerous where trial courts, and this Court, have set aside verdicts because the evidence was insufficient to sustain same, or there was no evidence upon which

such a verdict could be sustained. Early in the history of this State, in the case of *Sims* v. *Bank of Charleston*, 8 W. Va. 274, this Court held:

> "Evidence offered to establish an alleged debt should do more than produce a suspicion of the fact—it should be sufficiently clear and definite in its character to satisfy the mind of the court of the fact, to a reasonable certainty."

That holding was made in a chancery cause, but the principle applies to the trial of a law action before a jury as well. In *Robinson* v. *West Virginia & P. R. Co.*, 40 W. Va. 583, 21 S. E. 727, it was held:

> "A verdict based alone on mere conjecture, without evidence to support it, where the rule as to the burden of proof requires some reliable affirmative evidence, should not be permitted to stand."

In *Moore* v. *West Virginia Heat & Light Co.*, 65 W. Va. 552, 64 S. E. 721, this Court held:

> "In an action for tort, the plaintiff bearing the burden of proof, a verdict for him cannot be found on evidence which affords mere conjecture that the liability exists, and leaves the minds of jurors in equipoise and reasonable doubt. The evidence must generate an actual rational belief in the existence of the disputed fact."

> "Where a liability is asserted on the ground of tort, the plaintiff bears the burden of proof of the fact on which the liability rests, and the burden to disprove such fact does not shift to the shoulders of the defendant until plaintiff's evidence shows a state of facts sufficient to establish a rational belief of the existence of such fact."

It will be noted that "burden of proof" was used or applied to different situations. In *Helm* v. *Manufacturers' Light & Heat Co.*, 86 W. Va. 628, 104 S. E. 59, it was held:

> "Though equality of probability of actionable negligence on the part of both plaintiff and defendant, disclosed by the evidence in an action for

> a personal injury, bars right of recovery, the jury may properly give force and effect to facts and circumstances tending to emphasize and sustain the theory of the plaintiff and impair and weaken that of the defendant, and so conclude that there is a preponderance of evidence in favor of the former. Mere probability that the injury was caused by plaintiff's negligence does not preclude right of recovery, if there is a stronger probability of actionable negligence on the part of the defendant."

This case would seem to recognize the right of a jury to weigh probabilities developed by the evidence, and the return of a verdict based upon that probability which it considered the most plausible. Of course, it is recognized that the Gas Company was under duty to maintain the gas service lines under its control in a reasonably safe condition. *Dower* v. *Gas Company,* 71 W. Va. 417, 76 S. E. 845. In *Legg* v. *Junior Mercantile Company,* 105 W. Va. 287, 142 S. E. 259, it was held:

> "In an action for recovery of an alleged debt the burden rests upon plaintiff to prove by evidence or show by stipulation of fact some reasonable and substantial basis on which a judgment can be founded. If the alleged debt or the amount thereof is left to conjecture or uncertainty, the burden has not been carried, and judgment should be for defendant."

The same principle is upheld in the cases of *Norfolk & Western Railway Co.* v. *Cromer's, Admr.,* 99 Va. 763, 40 S. E. 54; *Chesapeake & Ohio Railway Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508; and *Norfolk & Western Railway Co.* v. *Briggs,* 103 Va. 105, 48 S. E. 521. These Virginia cases are strong authorities for the proposition that a party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from presumption, but must be found on some fact legally established.

With these authorities as our guide, we have come to the conclusion that the evidence in the case at bar is insufficient to sustain the verdict returned by the jury. We think the trial court should have given Instruction No. 1 offered by the Gas Company, and that not having given that instruction, and the jury having returned a verdict in favor of the plaintiff and against the Gas Company, the same should be set aside and a new trial awarded. There can be no question but that there was a gas explosion which caused the death of plaintiff's decedent, and that such explosion necessarily originated from negligence, in some form, of some person, firm or corporation. But that fact is not sufficient to warrant a judgment against any particular defendant, unless there is evidence sufficient to convince a reasonable mind that such defendant was the negligent agency which proximately caused the explosion. We cannot find, nor do we think the jury was justified in finding from the evidence produced on the trial of this case, just who was responsible for the conditions which brought about the explosion. If the defendant, the United Fuel Gas Company, was guilty of negligence, it must have been in connection with its service line which crossed the twenty foot paved alley, or the condition of the stopcock at the south curb of said alley. From that point on in the direction of the dwelling in which the explosion occurred, responsibility for keeping the service gas line in safe condition rested upon the owner or occupant of the property being served. Hagan & Co., the City of Huntington and Jacob H. Brown, having been relieved of liability, either by direction of the court or a verdict of the jury, their supposed connection with the explosion need not be here considered, and we need only to endeavor to appraise the situation as it affects the plaintiff and the Gas Company. There is no evidence that the service line across the paved alley was out of repair, other than the testimony of the one witness to the effect that a man, who claimed to be a representative of the Gas Company, had used a gauge in the afternoon of the explosion and perhaps later, and found gas under the surface of the paved alley and in the driveway between the

brick building and an adjoining structure owned by Brown. If this testimony be treated as true and pertinent, it leaves us in doubt as to the point along the gas line where the gas escaped, if anywhere. We are of the opinion that the jury was not warranted, under the evidence, in fixing responsibility for the explosion on the Gas Company rather than on the occupants of the dwelling or the owner thereof who were responsible for conditions of the gas equipment after it left the stopcock at the curb of the paved alley. The fact that there was a noticeable amount of sewer gas in the vicinity of the exploded building is another fact to be considered; and still more important, the fact, well established, that a very large amount of gas, stated to be a thousand cubic feet, had passed through the meter located at the corner of the wrecked building during the two days immediately prior to the explosion. Of course, this large amount of gas was either consumed or escaped beyond the meter outlet, otherwise its measurement by the meter would not have been registered, and this may be a reasonable explanation of how the explosion occurred. We do not say that the explosion occurred in this way. We do not say that sewer gas caused the explosion; or that the explosion was caused by negligence in maintaining the service line leading from the curb in the direction of the wrecked building, or through the negligence of the Gas Company in failing to keep the service lines and stopcock under its control in a safe condition. We cannot determine from the evidence in the case what caused the explosion, or who, if anyone, was negligent in connection therewith. It is simply a case where plaintiff's claim has not been proved by that character of evidence which courts require of a plaintiff to prove his claim against a defendant. The authorities we have cited above are to the effect that we cannot engage in speculation or conjecture in determining liability for an act of alleged negligence. To uphold the verdict in this case, we would have to depend to a very great extent indeed on speculation and conjecture as to how this unfortunate accident occurred. This we are unwilling to do.

The only errors assigned in the brief of plaintiff in

error, not considered above, relate to remarks of counsel for the plaintiff below, in his closing argument, and the refusal of the trial court to inquire of the jury as to whether they understood that they could return a verdict for damages in an amount less than $10,000.00. We do not believe that the court committed error in its holdings on the questions raised by these two assignments. As to the first, counsel did not go beyond the wide latitude permitted counsel in argument. The most inflammatory statement is this:

> "All we ask, gentlemen of the jury, is simple justice. If you are going to say by your verdict in this case that this gas company, with its facilities in the public highway, can put them in there and go away and leave them, and as a result of their negligence in not, as we say, properly maintaining their own equipment, blow up the houses and destroy the lives of the citizens, the children of this town, I shall indeed be surprised."

Only in an extreme case of the abuse of such permitted latitude does an appellate court interfere, and we do not consider the case at bar to be one calling for interference. As to the second assignment mentioned above, we would consider as improper any suggestion, by a trial court to a jury, direct or implied, as to the amount of the verdict they should return.

The judgment of the Circuit Court of Cabell County, entered on the 2nd day of April, 1949, is reversed, the verdict on which such judgment was based is set aside, and the cause remanded to said court for a new trial.

*Reversed; verdict set*
*aside; cause remanded.*